Elizabeth L. BELLISSIMO

v.

WESTINGHOUSE ELECTRIC CORP., a Corporation; Robert J. McGrath; and Gerald B. Marcovsky, individuals.

Appeal of WESTINGHOUSE ELECTRIC CORPORATION and Gerald B. Marcovsky.

No. 84–3375.

United States Court of Appeals, Third Circuit.

Argued Feb. 26, 1985.

Decided June 11, 1985.

Rehearing and Rehearing In Banc Denied July 10, 1985.

Charles R. Volk, Jane A. Lewis (Argued), Thorp, Reed & Armstrong, Pittsburgh, Pa., for appellants.

Loraine Smith Tabakin (Argued), Tabakin & Carroll, Howard F. Messer, E.J. Strassburger, Strassburger McKenna Messer Shilobod & Gutnick, Pittsburgh, Pa., for appellee.

Before ADAMS, WEIS and WISDOM *, Circuit Judges.

* The Hon. John Minor Wisdom, Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

## OPINION OF THE COURT

WISDOM, Senior Circuit Judge.

In this case, we must determine whether a plaintiff in a sexual discrimination case has met her burden of proof under *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff, a discharged attorney, won judgment on her allegations of sexual discrimination. The defendants appealed, arguing that the district court erred in finding sexual discrimination on the evidence adduced at trial and in failing to assign to the plaintiff the burden of proving by a preponderance of the evidence that the defendant's legitimate, nondiscriminatory reason for her discharge was pretextual. We hold that the district court's finding that the reasons alleged for the plaintiff's discharge were pretextual is clearly erroneous, and accordingly reverse.

## I. FACTS AND PROCEEDINGS BELOW

Elizabeth Bellissimo, an attorney, challenges her discharge from the legal department of Westinghouse Electric Corporation. Ms. Bellissimo's complaint alleged violations of Title VII, the Pennsylvania Human Relations Act, and the Equal Pay Act of 1963. It also alleged pendent state claims for wrongful discharge, defamation, and intentional infliction of emotional distress. The court dismissed the wrongful discharge claim upon the defendants' motion. Ms. Bellissimo withdrew her defamation claims.

At the end of a consolidated trial, the district judge dismissed the claim of intentional infliction of emotional distress, and submitted only the equal pay count to the jury. The jury returned a verdict of $1016. The district court denied liquidated damages, holding that Westinghouse acted in good faith and had established that it had reasonable grounds for believing it was in compliance with the Equal Pay Act. The court made Findings of Fact and Conclusions of Law on the Title VII claim, and entered judgment for Ms. Bellissimo in the sum of $121,670.67, the value of her projected wages at Westinghouse through one year beyond the date of judgment, minus about $8800 she earned as a sole practitioner from 1980 through 1983.

Ms. Bellissimo had interned for Westinghouse while a law student during the summers of 1976 and 1977. She had no problems with her supervisor there. After her acceptance by Westinghouse, she worked for six months in the International Law Section. Her supervisor there had no problems in his working relationship with Ms. Bellissimo and found her work to be adequate. In June 1979, Ms. Bellissimo moved to Westinghouse's Ardmore Site as a contract specialist, the job that she had originally requested. Her supervisor there rated her work as good and had no serious problems in his working relationship with her. Ms. Bellissimo became dissatisfied with her position, however, and requested a transfer to the legal department. In November 1979, she was transferred to the "learning and leisure" group of the legal department after interviews with Mr. Marcovsky, who was to be her supervisor.

Ms. Bellissimo had heard that Mr. Marcovsky was difficult to work with. She therefore maintained contemporaneous notes of their conversations and conflicts from early in her employment in the legal department. The two had a running feud. Ms. Bellissimo became angry when Mr. Marcovsky suggested that she bring her luggage to the office on the day of a business trip rather than go home for it later. Mr. Marcovsky felt that her clothes were too tight-fitting, too "flashy," and were not in keeping with the department's policy of dressing in a conservative style. Mr. Marcovsky asked Ms. Bellissimo's secretary if she and Ms. Bellissimo were "getting along." He counseled Ms. Bellissimo that dancing in a bar with a client and leaving the bar with that client created a negative impression with the other clients who were present, and told her to feign a headache and retire to her room if confronted with such a situation again. Mr. McGrath, a

superior of Mr. Marcovsky, later overruled this advice to Ms. Bellissimo.

The difficulties between the two also emerged in disagreements over hours and punctuality at client meetings. Ms. Bellissimo wished to work 8:30 to 5:30, and her working hours remained an area of contention throughout her work in the law department. Mr. Marcovsky complained that she was slow in performing her work. The district court made no findings as to her work product. Westinghouse also alleges that she was late to client meetings, but Ms. Bellissimo contests the degree of her tardiness. The district court made no finding on this issue, and the evidence is conflicting.

The dismal working relationship between Ms. Bellissimo and Mr. Marcovsky reached its nadir on August 8, 1980, whem Mr. Marcovsky spoke to her about being late for a client's meeting. Ms. Bellissimo screamed at Mr. Marcovsky, threatened to see a client about the perceived abuse she had received, walked out, and slammed the door. Ms. Bellissimo then took her complaints to the Executive Vice President of the Westinghouse division that Mr. Marcovsky served. He advised her to speak instead with Mr. Marcovsky. Westinghouse's general counsel testified that her action, which had immersed a Vice President in personnel matters within the law department, was important in his decision to discharge Ms. Bellissimo. Mr. Marcovsky told his superior, Mr. McGrath, that he was no longer able to supervise Ms. Bellissimo. On August 18, Mr. McGrath met with Ms. Bellissimo and told her that she would either resign by August 22, 1980, with full salary through the end of September 1980, or be terminated effective August 31, 1980. She chose to be discharged.

Ms. Bellissimo filed a timely comprehensive written charge of sex discrimination with the EEOC. The EEOC did not conclude an investigation within a year, and so, at Ms. Bellissimo's request, it issued a right to sue letter on September 24, 1981. She then sued. At the conclusion of an eight-day trial, the district court found, in part:

> "11. Plaintiff established that the legitimate, nondiscriminatory reason asserted by defendants [for her discharge] is a mere pretext in that she established that the reason she could not get along with defendant Marcovsky was because he bore a discriminatory animus against her on the basis of her sex and that 'but for' this discrimination she would not have been discharged."

On appeal, Westinghouse contends that in all of the areas where Ms. Bellissimo complained of her treatment—dress, working hours, luggage handling, and behavior with clients—Ms. Bellissimo failed to offer any evidence that she was treated any differently from a male employee, and that without evidence of disparate treatment, Ms. Bellissimo could not sustain her burden of proof. Ms. Bellissimo counters that she had alleged the "obvious" basis of discrimination, the discharge, and that "Bellissimo offered ample proof of Marcovsky's pervasive, antagonistic supervision directed against her as a woman."

## II. DISCUSSION

We begin our review by acknowledging that great deference must be paid to the district court's findings of fact in a discrimination case. The Supreme Court has recently cautioned against the danger of what is essentially a *de novo*, appellate review of the record in a Title VII sexual discrimination case:

> "The trial judge's major role is the determination of fact, and with experience in that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources."

*Anderson v. City of Bessemer*, —— U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518, 529 (1985). Justice Powell, however, recognized in his concurring opinion that courts of appeals may nevertheless sometimes have to undertake a "comprehensive re-

view of the entire record." *Id.* at ——, 105 S.Ct. at 1515, 84 L.Ed.2d at 533. (Powell, J., concurring). We find that the present case is one in which such review is appropriate.

■ The crucial issue in this trial, a Title VII suit claiming sexual discrimination, was whether Marcovsky's actions were motivated by Ms. Bellissimo's gender. The district court's resolution of this issue was a finding of fact and may be reversed by this court only if the determination was "clearly erroneous" within the meaning of Fed.R.Civ.P. 52(a). *Pullman-Standard v. Swint,* 456 U.S. 273, 285–90, 102 S.Ct. 1781, 1784–88, 72 L.Ed.2d 66, 77–81 (1982).

The situation here is unusual. The facts are essentially undisputed. Both Marcovsky and Bellissimo were careful record keepers and both were able to provide detailed recountals. The record reveals exceptionally accurate and complete testimony from both sides. We also recognize, however, the parties' legal training may complicate the issues: An attorney intent to discriminate would probably employ a subtle campaign to avoid detection or liability.

*A. Burdens of Proof in a Title VII Case*

As Judge Adams said in his dissent in *University of Pittsburgh,* there is "considerable confusion" regarding the proper standard of proof in Title VII cases. *Lewis v. University of Pittsburgh,* 725 F.2d 910, 921 (3d Cir.1983). The Third Circuit has articulated a "but for" test whereby a plaintiff must show that his status as a minority class was the but for reason for

the treatment accorded. *Id.* at 916. The Court has followed this test. *Dillon v. Coles,* 746 F.2d 998 (3d Cir.1984); *Duffy v. Wheeling Pittsburgh Steel,* 738 F.2d 1393 (3d Cir.1984).[1]

■ The procedure for reviewing a Title VII case is well-settled. The plaintiff has the burden first of showing by a preponderance of the evidence to make out a prima facie case of discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), refining *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff alleging a discriminatory firing need show only that he was fired from a job for which he was qualified while others not in the protected class were treated more favorably. *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1395 (3d Cir.1984). The district court correctly found that Ms. Bellissimo "established a prima facie case".

■ After a plaintiff has established a prima facie case of discrimination, the burden is on the defendant to dispel the adverse inference by articulating "some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine,* 450 U.S. at 2532, 101 S.Ct. at 1093, 67 L.Ed.2d at 215. The defendant's burden is not persuasion but only production of evidence supporting a reason for the discharge. If the defendant's evidence raises a genuine issue of fact, the presumption created by the plaintiff's prima facie showing drops from the case. *Id.* at 254–55, 101 S.Ct. at 1094–

---

1. The "but for" test does not require a plaintiff to prove that the discriminatory reason was *the* determinative factor, but only that it was *a* determinative factor. *See Smithers v. Bailar,* 629 F.2d 892, 898 (3d Cir.1980) ("a plaintiff need not prove that [the discriminatory reason] was the employer's sole or exclusive consideration, but ... he must prove that [the discriminatory reason] made a difference in deciding the promotion, retention, or discharge"). Interpreting Title VII to require proof of "the determinative factor" is inconsistent with the "but for" causation test, insofar as plaintiff would be required to show that the discriminatory motive was the *sole* reason for the action taken. More than one

"but for" cause can contribute to an employment decision, and if any one of those determinative factors is discriminatory, Title VII has been violated. *See Lewis v. University of Pittsburgh,* 725 F.2d at 917 n. 8. On two occasions this Court has upheld jury instructions using the term "the determinative factor," but in both instances the Court concluded that in context the use of the definite article did not imply a "sole determinative factor" standard. *See Lewis v. University of Pittsburgh,* 725 F.2d at 916–18; *Smithers v. Bailar,* 629 F.2d at 896–98 ("appellate court reviews the charge as a whole, preserving context").

95, 67 L.Ed.2d at 215–16. The district court also found that the defendants had cleared this hurdle: "Defendants established a legitimate, nondiscriminatory reason for plaintiff's discharge ... in that the testimony and evidence showed that plaintiff was terminated due to her inability to get along with her supervisor, defendant [Marcovsky]." Conclusion of Law No. 10.

■ Once the defendant has satisfied this requirement of articulating a nondiscriminatory reason for the discharge, the ultimate burden remains with the plaintiff to prove the alleged reason was pretextual, that is, that the defendant intentionally discriminated against the plaintiff. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. On appeal, Westinghouse challenges the sufficiency of Ms. Bellissimo's evidence used to discredit their legitimate, nondiscriminatory reason for her discharge. Westinghouse argues that any finding of discriminatory animus is clearly erroneous because there is no evidence—let alone substantial evidence—of more favorable treatment accorded male employees. Ms. Bellissimo counters that she has met her burden and proved disparate treatment by showing the "obvious basis of the discrimination": the discharge.

■ Proof of discharge will establish a prima facie showing in a Title VII suit. We have held that a plaintiff alleging a discriminatory layoff need show only that he was laid off from a job for which he was qualified while others not in the protected class were retained. *Massarsky v. General Motors Corporation*, 706 F.2d 111, 118 (3d Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). This prima facie case "is easily made out." *Id.* Bellissimo has met this burden. She established that she was within a protected class, women, and that Westinghouse fired her from her job within the Legal Department even though she was qualified to work as an attorney there. She has also shown that men who worked within the Legal Department were not fired.

■ Bellissimo has, however, failed to rebut Westinghouse's nondiscriminatory reason for her discharge. A discharge is not per se disparate treatment. It violates Title VII's commands only if it is made on a basis that would not result in the discharge of a male employee. *See Moore v. City of Charlotte*, 754 F.2d 1100, 1106, 1110 (4th Cir.1985). Westinghouse argued that it discharged Bellissimo because of her inability to cooperate with her supervisor. The district court found that Bellissimo proved that this was pretext. We find that this conclusion is clearly erroneous because Ms. Bellissimo failed to make any showing of disparate treatment and because Westinghouse proved that male attorneys were treated the same as she in the disputed areas.

Both *Dillon* and *Duffy* necessarily imply that a plaintiff making allegations similar to Ms. Bellissimo's is required to show disparate treatment. In *Duffy*, for example, both the majority opinion and Judge Adams's dissent noted that the district court made comparisons between the discharged employee and the younger salesmen who were kept on the force, although they disagreed over the accuracy of the district court's interpretation of the data. 738 F.2d at 1396–97; *id.* at 1401–03 (Adams, J., dissenting). In *Dillon*, the Court noted that the district court had made explicit findings of fact that the rejected female plaintiff was similarly or better situated than three male competitors who were offered the job. 746 F.2d at 1001–02. These reviews of the district court's findings are consistent with the Court's earlier guidance in *Kunda v. Muhlenberg College*, 621 F.2d 532, 538 (3d Cir.1980):

> The [Civil Rights Act of 1964] prohibits only "discrimination." Therefore, consideration of the practices of the college toward the plaintiff must be evaluated in light of its practices toward the allegedly more favored group, in this case, males.

## B. Review of the Evidence

It appears that the conflict between Ms. Bellissimo and Mr. Marcovsky began in earnest when he suggested to her that, when leaving for a business trip at 7:00 P.M. from the Pittsburgh airport, it would be better to bring her luggage with her to

the office in the morning rather than for her to go home and pick it up. This is certainly an observation that is not necessarily provocative or offensive. The Westinghouse office is midway between the airport and Ms. Bellissimo's home. She conceded that Mr. Marcovsky brought his luggage to the office prior to a trip.

The next incident, to which the district court attached significance, concerned Ms. Bellissimo's behavior in a cocktail lounge after a meeting with clients. There she danced with a Westinghouse executive and then left the bar with him. Mr. Marcovsky, hearing of the incident through the complaint of a client present at the cocktail lounge, advised her that on business trips she should relate to Westinghouse executives solely as lawyer to client. Ms. Bellissimo characterized the incident as "blatant discrimination"; she felt she "could not do something because [she] was a woman."

We find this advice to be within the realm of Mr. Marcovsky's concerns as a supervisor. Mr. Marcovsky testified that he spoke to Ms. Bellissimo only because of the complaint. Our review of the testimony on this incident convinces us that the advice was made with civility and with deference. He emphasized that her behavior was not wrong, but simply that it "created a negative impression with the clients."

■ In that same discussion, Mr. Marcovsky suggested to Ms. Bellissimo that she, in her own words, "tone down" her attire. Clothing was never mentioned again during Ms. Bellissimo's employment. The district court concluded that this remark was part of Mr. Marcovsky's animus towards Ms. Bellissimo. Dress codes, however, are permissible under Title VII as long as they, like other work rules, are enforced even-handedly between men and women, even though the specific requirements may differ. As the D.C. Circuit has noted, an employer is permitted to exercise its legitimate concern for the business image created by the appearance of its employees:

> Perhaps no facet of business life is more important than a company's place in public estimation. That the image created

by its employees dealing with the public when on company assignment affects its relations is so well known that we may take judicial notice of an employer's proper desire to achieve favorable acceptance.

*Fagan v. National Cash Register Co.,* 481 F.2d 1115, 1124–25 (D.C.Cir.1973).

Westinghouse's evidence shows that although it had no written code, it consistently sought to maintain a conservative dress style in its legal department, and that men were also counselled on their attire. Male attorneys were urged not to wear sport jackets or slacks to the office, and to keep their jackets on during meetings. We therefore find that Mr. Marcovsky's counselling Ms. Bellissimo regarding her attire was not disparate treatment and will not support a Title VII claim.

The district court observed in three findings of fact that Mr. Marcovsky had questioned Ms. Bellissimo's working hours. The court, however, failed to make any finding whether her working hours were in fact unsatisfactory. The court also failed to make any finding concerning whether male attorneys worked longer or shorter hours, or whether they were counselled about their hours. What evidence there is undermines Ms. Bellissimo's allegation of sexual discrimination. Testimony from both Ms. Bellissimo and Mr. Marcovsky shows that Ms. Bellissimo stated her wish to work only 40 hours a week and her belief that she should receive greater salary if she were to work longer hours. There was, however, evidence that attorneys and other management professionals frequently worked more than forty hours without additional compensation. We find that, without more of a showing from Ms. Bellissimo, this counselling regarding work hours was appropriate and is not a showing of animus or sexual discrimination.

The district court also observed that Mr. Marcovsky asked his secretary, who was also Ms. Bellissimo's secretary, if she and Ms. Bellissimo were getting along. She reported that they were getting along very well. Ms. Bellissimo found the exchange offensive because "[Marcovsky] could have

asked me if we were getting along." The district court has given no indication of the reason it considered this exchange inappropriate or evidence of animus. We find nothing in the query offensive or abusive, or indicative of an abusive attitude. We therefore find that this exchange proves nothing substantial in Ms. Bellissimo's Title VII claim.

Finally, the district court found that Ms. Bellissimo requested a performance review, but that Mr. Marcovsky did not offer such a review. The undisputed trial testimony shows that Mr. Marcovsky told Ms. Bellissimo that Westinghouse's practice was to conduct evaluations only annually, although he continuously reviewed and evaluated her work. There was no evidence that Westinghouse selectively enforced its policy on only annual reviews. Ms. Bellissimo has failed to establish any significance to Mr. Marcovsky's—and Westinghouse's—review procedure.

In short, the district court found that counselling an employee, here an attorney in a corporate law department, concerning her public behavior with a client on a business trip, her working hours, and—on one occasion only—her attire, constituted discriminatory treatment. The district court made this holding without finding, and without evidence, that men in the law department had been treated any differently, and in spite of evidence that two male attorneys had been reprimanded for cavorting in a public park, that male attorneys worked more than 40 hours per week, and that male attorneys had been advised to conform to a conservative dress style.

### III.

The judgment in a case such as this rests on whether the plaintiff carries "the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1095, 67 L.Ed.2d at 217. With deference to the clearly erroneous standard, we are convinced that Ms. Bellissimo failed to establish the pretextual nature of Westinghouse's reason for discharge. In all of the aspects of employment the district court examined—dress, working hours, behavior with clients, evaluations, and luggage handling—there was no evidence to support her contention that she was treated any differently from male employees. On the contrary, evidence in the record shows that she was treated the same as male attorneys. Mr. Marcovsky emerges as a strict supervisor who counselled Ms. Bellissimo to adapt to a department with exacting standards in many areas typically left to the individual's discretion. Ms. Bellissimo emerges as an adequate but strident, touchy, and difficult employee. This unfortunate and destructive conflict of personalities does not establish sexual discrimination. The judgment of the district court finding Westinghouse and Marcovsky guilty of sexual discrimination accordingly will be reversed.