John T. GRAHAM, Appellant,

v.

F.B. LEOPOLD COMPANY, INC., Appellee.

No. 85–3166.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 3, 1985.

Decided Dec. 20, 1985.

Frank P. Krizner, Evans City, Pa., for appellant.

John C. Unkovic, David J. McAllister, Reed Smith Shaw & McClay, Pittsburgh, Pa., for appellee.

Before ADAMS, GIBBONS and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

The appellant brought suit in the Federal District Court for the Western District of Pennsylvania, alleging that his former employer had improperly discharged him because of his age. The district court granted the defendant employer's motion for summary judgment, and the plaintiff employee appealed. We reverse.

### I.

On December 31, 1983, the defendant, the F.B. Leopold Company, fired the plaintiff, John T. Graham. Graham, who had worked for Leopold for twenty-four years and who at the time of his dismissal was the superintendent of a plastics plant that Leopold operates in western Pennsylvania, was fifty-three years old. Leopold promoted James Green, who had previously served as a foreman in another Leopold plant, to the position formerly held by Graham. At the time of his promotion, Green was forty-one years old.

Approximately eighteen months before Graham's dismissal, the Muller Company acquired Leopold. With an eye towards increasing the profitability of Leopold's operations, Muller and Leopold officials met in the fall of 1983 to consider personnel cutbacks. One group these officials targeted for reduction was Leopold's five-person supervisory cadre, which included Graham and Green. Although Graham had received generally favorable performance reviews during his tenure, he was the one supervisor elected for dismissal.

George Goyak, Leopold's operations manager, delivered the termination letter to Graham on the last day of 1983. At that time, according to Graham, Goyak told him, "If I were you, I would get a lawyer and fight this." Graham apparently took this advice to heart.

Alleging that Leopold had violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1982), when it fired him,[1] Graham filed suit against Leopold in May 1984. The defendant employer moved for summary judgment, which the district court granted in an opinion dated February 27, 1985. *See Graham v. F.B. Leopold Co.*, 602 F.Supp. 1423 (W.D.Pa.1985).

### II.

The Age Discrimination in Employment Act (ADEA) makes it unlawful for an employer "to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1) (1982). Graham alleges that Leopold discharged him because of his age.

Analogizing the ADEA to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982), the district court employed in this ADEA suit the three-step procedure developed by the Supreme Court for assessment of Title VII claims. Both parties to this appeal argue that the district court's invocation of Title VII doctrine was appropriate. We agree. *See Rodriguez v. Taylor*, 569 F.2d 1231, 1239 (3d Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978).

Under the Supreme Court's scheme, a Title VII plaintiff first must establish a prima facie case of unlawful discrimination.[2] *See McDonnell Douglas Corp. v.*

---

1. Graham also alleged in his complaint that Leopold's actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982). The district court dismissed this claim, and nothing in the record or in the appellant's brief leads us to question this decision.

2. This may be done by showing (i) that he belongs to a [protected class]; (ii) that he ...

*Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253 & n. 6, 101 S.Ct. 1089, 1093 & n. 6, 67 L.Ed.2d 207 (1981); *Dillon v. Coles,* 746 F.2d 998, 1003 (3d Cir.1984). If the plaintiff succeeds in making out this prima facie case, the burden of production then shifts to the defendant employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell,* 411 U.S. at 802, 93 S.Ct. at 1824. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. Should the employer articulate such a reason, the burden of production shifts back to the employee, who then must demonstrate either that the employer's proffered reason is a pretext or that the employer's decision was more likely motivated by some discriminatory reason.[3] *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825.[4]

Following this sequence, the district court found that Graham had established a prima facie case of age discrimination and that Leopold had demonstrated a legitimate, nondiscriminatory reason for its decision to fire Graham. *See Graham v. F.B. Leopold Co.,* 602 F.Supp. 1423, 1424–25 (W.D.Pa.1985). However, the court held that Graham then failed to introduce evidence that the employer's reason was a pretext or evidence proving the defendant's discriminatory intent. Consequently, it

granted summary judgment for Leopold. *See id.* at 1425–26.

When addressing a summary judgment motion, the appropriate inquiry is

whether the admissible evidence, in the record in whatever form, from whatever source, considered in the light most favorable to the respondent to the motion, fails to establish a prima facie case or defense.... If .... there is *any* evidence in the record from *any* source from which a reasonable inference in the respondent's favor may be drawn, the moving party simply cannot obtain a summary judgment....

*In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 258 (3d Cir.1983) (emphasis added), *cert. granted,* —— U.S. ——, 105 S.Ct. 1863, 85 L.Ed.2d 157 (1985). *See also Wolk v. Saks Fifth Avenue Inc.,* 728 F.2d 221, 224 (3d Cir. 1984) (" '[S]ummary judgment is never warranted except on a clear showing that no genuine issue of any material fact remains for trial....' "; quoting *Suchomajcz v. Hummel Chemical Co.,* 524 F.2d 19, 24 (3d Cir.1975)). Accordingly, for Leopold to have prevailed on its motion, no material fact could have been at issue.

In opposing Leopold's motion for summary judgment. Graham relied principally on what he alleged was a damaging admission by a Leopold official.[5] Recounting in his deposition the conversation that he had with George Goyak—Leopold's operations manager and the one who notified him of

---

was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected, and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (footnote omitted). *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253 & n. 6, 101 S.Ct. 1089, 1093 & n. 6, 67 L.Ed.2d 207 (1981).

3. A Title VII plaintiff may be able to satisfy this last burden of production—and thus avoid summary judgment—even without introducing further evidence at this point. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10 ("In-

deed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.").

4. Notwithstanding the various shifts in the burden of production, the plaintiff bears the risk of nonpersuasion throughout. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Dillon,* 746 F.2d at 1003.

5. Graham contended in the district court that other material factual issues were in sufficient dispute to bar summary judgment, but the district court rejected this argument. *See Graham v. F.B. Leopold Co.,* 602 F.Supp. 1423, 1425 (W.D.Pa.1985). In light of our disposition of this case, we see no need to address the merits of Graham's contention.

his dismissal—on the day he was fired, Graham stated, "He [Goyak] said, [']Well you're dog meat. You are going, gone.['] [A]nd then he said he would advise me to get a lawyer and fight this thing." Joint Appendix at 50 (Deposition of John Graham). The deposition later featured the following colloquy:

Q. Has anybody ever told you specifically that they believed you were terminated because of your age?

. . . .

A. The only time that anyone alluded to anything like that was—my being misused, was Goyak and that's when he made the statement that he felt very strongly that I should take this to court and fight it.

. . . .

A. As a matter of fact, yes. George Goyak did tell me that I was in the protected age group.

Q. And did you ask him what he meant by that?

A. Well I knew what he meant by that, that I was in an age bracket and that I just couldn't be talked out on the street.

Joint Appendix at 62–63 (Deposition of John Graham).

The critical question for this appeal is whether this deposition testimony creates a genuine dispute about a material issue of fact—whether Goyak's comments, as reported by Graham, would allow a jury to infer that Leopold has discharged Graham because of his age.[6] The district court held that this testimony was not enough to defeat the summary judgment motion:

We cannot infer from the evidence or from the inferences reasonably drawn from plaintiff's testimony regarding an isolated comment by Goyak that age was a factor in the decision to terminate the plaintiff. We do infer that Goyak, who was forced to chose [sic] which one management person among the five would be terminated, was somewhat angry and uncomfortable about plaintiff's termination. We interpret Goyak's statements to plaintiff to be a show of support for the plaintiff.... We take Goyak's comment about plaintiff being in a protected age group as a layman's suggestion that Graham's age might provide him with some extra legal protections not afforded to others, rather than as an intent to discriminate because of age. We, therefore, find plaintiff's evidence insufficient as a matter of law to show either that defendant's legitimate nondiscriminatory reason was a pretext, or that defendant had a discriminatory intent in terminating the plaintiff.

*Graham v. F.B. Leopold Co.*, 602 F.Supp. 1423, 1425–26 (W.D.Pa.1985) (footnotes omitted).

What the district court chooses to infer or chooses not to infer is simply not relevant to consideration of a summary judgment motion. Rather, the appropriate inquiry is whether, from the evidence available at the time of the motion's disposition, a jury could reasonably have inferred that Leopold had illegally discriminated against Graham. The district court made no ruling that a jury could not draw such an inference, and in light of Graham's deposition we believe that, as a matter of law, the record would not support a finding. We will reverse.

---

**6.** Leopold contends in its brief that Goyak's comments, whatever they imply, are irrelevant. According to the employer, because Robert Lyons, a former Leopold president, made the ultimate decision to dismiss Graham, only his intent is relevant. *See* Appellee's Brief at 23. The implication of this argument is that Goyak's opinion of Graham's dismissal is irrelevant because Goyak either was not party to the decisionmaking process or was not aware of the considerations that produced the decision. Yet, such an implication is contrary to the record. It is quite clear that Goyak was fully apprised of the decisionmaking process. Indeed, the record reveals that it was Goyak who was principally responsible for the decision to release Graham. *See* Joint Appendix at 133 (Deposition of Robert Lyons); Joint Appendix at 166 (Deposition of George Goyak).

ADAMS, Circuit Judge, dissenting.

The majority holds that appellant John Graham submitted sufficient evidence to support a reasonable inference that his dismissal was motivated by age discrimination, and that the district court therefore erred in granting defendant's motion for summary judgment. Because I believe that a finding of age discrimination could not reasonably be based upon the record presented here, I respectfully dissent.

## I.

My disagreement with the majority is not over the appropriate standard of review. I agree that summary judgment may be granted only when no genuine issues of material fact are in dispute, *Wolk v. Saks Fifth Avenue*, 728 F.2d 221, 224 (3d Cir. 1984), and that we must view all disputed facts in the light most favorable to the party opposing the motion. *EEOC v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 81 (3d Cir.1984). I agree also, that the grant of summary judgment may be affirmed only if the evidence, so viewed, would support a judgment for the moving party as a matter of law. *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir.1985).

In this appeal, Graham produced evidence that, at age 53, he was dismissed by his employer and replaced by a younger man. This evidence concededly was sufficient to make out a prima facie case under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (1982). *See Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393, 1395 (3d Cir.1984); *Massarsky v. General Motors Corp.*, 706 F.2d 111, 118 (3d Cir.1983). However, when defendant Leopold Company proffered a legitimate reason for having discharged appellant, the legal presumption that Graham's dismissal was motivated by age discrimination was dispelled. *See Texas Community Department of Affairs v. Burdine*, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981); *Bellissimo v. Westinghouse Electric Corp.*, 764 F.2d 175, 179 (3d Cir.1985). At that point, it was incumbent upon Graham to meet his ultimate burden of proving that the explanation for his termination articulated by Leopold was pretextual, and that his dismissal was motivated by consideration of his age. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Bellissimo*, 764 F.2d at 180.

The evidence of record shows that Graham was discharged by his employer during the course of a reorganization of the company brought about by serious business reverses, and that he was replaced by James Green. Green, at age 41 was also within the age group protected by the ADEA. The only other evidence proffered that might give rise to an inference of age discrimination was Graham's deposition testimony regarding alleged comments made to him by George Goyak, Leopold's operations manager, when Goyak informed appellant that he was being terminated. Goyak purportedly advised Graham to retain a lawyer and "fight this." He also, according to appellant, remarked that Graham was in the age bracket protected by the ADEA.

Assuming that this testimony is accurate, as we must, *see Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), I do not believe that, in light of the other undisputed evidence in the record, it is sufficient to support a reasonable inference that Graham's discharge was motivated by age discrimination. As the majority notes, *see* Majority at 172 n. 5, Goyak himself was principally responsible for the selection of Graham as the supervisory employee to be dismissed. App. at 133, 166. It is hardly rational to assume that Goyak's remarks were meant to imply that Goyak himself had recommended that Graham be terminated because of his age, and thus in violation of the law. Indeed, Goyak testified without contradiction that the decision to discharge Graham was based upon a review and a

comparison of the supervisory employees' records. App. at 188–90. Robert Lyons, the acting president of Leopold, also testified that Graham had been chosen for dismissal solely because his record compared unfavorably to those of the other supervisory employees. App. at 133, 147. On this record, I believe that the inference that Graham's termination was tainted by consideration of his age is impermissible.

## II.

Graham's loss of his job at Leopold, where he had been employed for over 23 years, naturally evokes sympathy. Nonetheless, it must be recognized that when a company falls upon hard times—as it is clear that Leopold did—it frequently must reorganize or risk financial collapse. Unfortunately, such restructuring usually entails the laying-off of employees, some of whom may have been devoted workers for many years. As distressing as this prospect may be, the ultimate survival of the company may depend upon its making such decisions. It is not the role of a federal court to stand in the way of a struggling business' legitimate efforts to rally and move forward. *See Wheeling Pittsburgh Steel Corp.*, 738 F.2d at 1398 (Adams, J., dissenting).

This is not to suggest that such a company is free to violate federal statutes barring discrimination in employment. I merely state that, in my view, the record presented here does not reasonably support an inference that the decision to terminate Graham was caused by anything but economically motivated efforts at reorganization. If courts strain to find snippets of evidence to support highly questionable inferences of discriminatory conduct they not only will unduly hobble necessary restructuring by hard-pressed industries, but eventually cause Congress to reconsider the controlling legislation.

I would affirm the district court's order granting summary judgment for the defendant.