Celso N. **MORALES**

v.

**MACK TRUCKS, INC.**

**Civ. A. No. 84–4454.**

United States District Court,
E.D. Pennsylvania.

April 8, 1986.

Richard J. Orloski, Allentown, Pa., for plaintiff.

Robert M. Goldich, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Plaintiff Celso N. Morales contends that defendant Mack Trucks, Inc.'s refusal to offer him employment in January, 1984, was a violation of Title VII of the Civil Rights Act of 1964. (42 U.S.C. § 2000e, *et seq.;* specifically, § 2000e–2(a) and § 2000e–5(f).) Morales also contends that Mack's actions constituted a breach of contract. Mack denies that any contractual rights are implicated and contends that its refusal to hire Morales was based upon a legitimate, job-related criterion, not his race or national origin. Accordingly, Mack has now moved for summary judgment.

Morales worked for Mack Trucks, Inc. from May, 1978, until November, 1979, when he and a substantial number of other employees were laid off for lack of work. As a member of the United Auto Workers of America (UAW), Morales and the others retained recall rights pursuant to the terms of the Master Shop Agreement between Mack and the Union. When two years had passed without a recall, Morales was notified by Mack that his Union seniority rights had expired, pursuant to the Agreement between Mack and the Union.

Thereafter, early in 1984, Mack experienced a significant increase in its business. After recalling laid off employees who still retained seniority rights, Mack had many remaining positions to fill by hiring new employees. Rather than resort to a general pool of untried workers, Mack's management decided to offer new employment to former employees, such as Morales, who no longer possessed a contractual right to recall. Mack compiled a list of such employees, slightly more than two hundred in number. However, Mack also prescreened the list to eliminate "problem" employees, defined as those with disciplinary infractions and/or poor attendance records. Mack selected ten absences or tardinesses as the cut-off for the latter criterion and declined to offer re-employment to any former employees whose records revealed ten or more attendance infractions in the calendar year prior to termination of employment.

In January, 1984, Morales learned that Mack was contacting former employees to offer them new positions with the company. Upon inquiry, he was told that he, too, would be contacted. However, when he realized that Mack had passed his former employee identification number in its progress through the list of former employees, he took further steps to determine why he had not been offered a job. At Morales' request, Lupe Pierce, of the Spanish-American Association, contacted Mack on his behalf. She learned that Mack's records indicated that Morales had an excessive number of absences and/or tardinesses for the year preceding his lay-off. Pierce requested a more thorough review of Morales's records. Thereafter, a Labor Relations Representative at Mack's Macungie plant, where Morales had worked for most of the period in question, reviewed his clock-in record. In doing so, the reviewer, Thomas Thomasik, eliminated absences due to a

work-related injury which Morales suffered in January, 1979, and for which he received Workers' Compensation benefits. However Thomasik concluded that Morales's absences exceeded the number Mack found acceptable. Accordingly, Morales was informed, through Pierce, that he was not offered employment because of a poor prior work record at Mack.

Morales disputed Mack's conclusion as to his work record, but pursued it no farther with the company at that time. Instead, he filed a complaint with the Equal Employment Opportunity Commission (EEOC). This case was timely filed after the EEOC issued a right to sue letter.

In addition to the pending motion for summary judgment, there are two other outstanding motions: Mack's motion for a non-jury trial and its motion to strike hearsay from the affidavit of Celso Morales, filed in support of Morales's brief in opposition to Mack's summary judgment motion. These motions have become moot in light of our decision on the motion for summary judgment.

The disposition of this case centers on Morales's record of absence and tardiness during his final year of employment at Mack. He contends that the accuracy thereof, at the least, raises an issue of material fact as to Mack's reason for not rehiring him. Mack contends that its record is accurate and, in any event, that it was entitled to rely on it in the absence of any other objective indicia of Morales's desirability as an employee, especially since all former employees considered for rehire were screened in the same way. In fact, Mack contends, the excessive number of attendance infractions attributed to Morales destroys his prima facie case of discrimination in that it rendered him unqualified for the position he sought.

The elements of a prima facie case under Title VII are both well established and well known: the plaintiff must show that he belongs to a protected class; that he was qualified for the position for which the defendant was hiring; that he was rejected; and that the position re-

mained open and the defendant continued to seek applicants with the plaintiff's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Mack's position, that Morales's attendance record rendered him unqualified, takes too narrow a view of the term "qualified". There is no suggestion in the record that Morales could not satisfactorily perform the duties of the position he sought, only that Mack considered him an undesirable prospect because of its prior experience with him. Morales was not "qualified" only in the sense that, although he belonged to a particular class of prospective employees singled out for treatment potentially more favorable than that accorded new applicants, he failed to fulfill the only requirement for receiving the favored treatment accorded former Mack employees, *viz.*, a satisfactory attendance and disciplinary record with the company. As a consequence, Mack refused to consider him for employment at all, since new applications from former employees were rejected. Applicants with no prior employment history at Mack were presumably subject to evaluation on more bases than their attendance and disciplinary records in former employment. Mack does not contend that such records were ever considered with respect to applicants previously unknown to it. Thus, to transform rehiring criteria, which applied only to a certain class of potential employees, into a job qualification would place Morales at a double disadvantage: not only did his prior employment at Mack foreclose future opportunities there, but it would effectively vitiate his right to seek review of Mack's treatment of him, which he contends was racially motivated. Moreover, the question of whether Mack's records with respect to Morales are accurate is an issue in dispute. A decision that plaintiff failed to establish a prima facie case by agreeing that he failed to show that he was qualified would resolve a disputed issue of fact in favor of the moving party, an improper procedure in considering a motion for summary judgment.

Finally, it appears from the record that Mack's conclusion as to Morales's bad attendance record may have been erroneous. Mack's internal review performed by Thomasik reduced Morales's purported attendance infractions to twenty-one. *See,* Exhibit C to Thomasik Affidavit. Our review of the remaining infractions suggests that three appear to be correct. Plaintiff does not offer any explanation as to why Mack's records indicate that he clocked-in late on January 3 and 8, 1979, and does not dispute that he was absent due to weather conditions on February 19, 1979. All of the remaining eighteen infractions occurred between January 12 and April 27, 1979, a period of time during which Morales was recovering from a back injury, sustained while working, on January 8, 1979.[1] Morales testified at his deposition that when working day shift during that period of time, he was required to report to the dispensary before clocking-in. Giving him the benefit of every doubt, it appears that six to eight other absences or instances of tardiness can be accounted for by that practice or because Morales was kept in the dispensary or sent home after reporting to the dispensary. That still leaves a minimum of ten infractions, which would render him unacceptable for rehire. However, Morales also testified that he was to report to the "light duty" desk before clock-in when he worked third shift. (Morales Deposition at 90). All of the third shift dates which Mack considered infractions are instances of tardiness ranging from two to eight minutes after the scheduled starting time. Even if only one of those can be attributed to Morales's inability to complete his injury-related procedures before beginning work, he would have been below Mack's threshhold of unacceptability.

True, Morales may have been wrong about the procedures he was to follow with respect to clocking-in, but the record is obscure enough on that issue to raise an issue of fact as to whether he was, in fact, unqualified according to Mack's rehiring criteria if his tardiness was related to his injury.

Having determined that plaintiff has stated a prima facie case of discrimination under Title VII, we next consider whether the defendant has articulated a legitimate, non-discriminatory reason for rejecting Morales. *McDonnell Douglas Corp. v. Green, supra.* On this issue, the question of whether Mack's records of Morales's attendance were, in fact, accurate assumes a different character. It is undisputed that Mack screened all former employees in the same way. Mack provided a detailed description of the procedures it used to determine which former employees were acceptable for rehire. (*See,* Deposition of George Windish at 8–19). There is no suggestion that the criteria varied. Morales asserted only his belief that some former employees were treated more favorably. Mack admits that three white employees who were initially rejected provided excuses for some of their absences, thereby reducing them to an acceptable number, and were subsequently rehired. Morales has not provided any evidence that would discredit Mack's explanation. Moreover, Mack acceded to the request of Lupe Pierce and conducted an individual review of Morales's records which reduced the number of his absences, although not below the number needed for rehire under Mack's policy. Thus, since Mack was willing to reconsider its initial decision as to Morales, at the request of his representative, presumably it would do the same for other former employees.[2]

---

1. Morales testified at his deposition that the injury occurred about mid-shift. (Morales Deposition at 78). Consequently, it would not account for tardiness at the beginning of the shift.

2. After the initial review of plaintiff's records by Thomasik, Morales did not, apparently, seek any further review from Mack or offer his explanation of why he maintained that the record was erroneous. Instead, he filed the EEOC

complaint. Morales now asserts that Mack failed to conduct a real review, but offers no supporting evidence. It is impossible at this juncture to know whether Mack would have accepted his explanation and conducted a further review if given the opportunity to do so. It is also impossible to determine whether the decision would have been reversed in his case as it was for the three employees who apparently did follow that course.

Next we consider the final aspect of the analysis of a Title VII claim, whether the plaintiff has borne his burden of demonstrating that the reason given by the defendant for not hiring the plaintiff is pretextual. *McDonnell Douglas Corp. v. Green, supra.* Again, the central issue is the significance of Morales's attendance record. Does the question of its accuracy raise an issue of material fact so as to preclude summary judgment for Mack?[3]

In a disparate treatment case under Title VII,[4] a plaintiff is required to rebut defendant's properly articulated, nondiscriminatory reason for its action. *Bellissimo v. Westinghouse Electric Corp.*, 764 F.2d 175 (3d Cir.1985). Morales has failed to do so in this case. The most he can show is that Mack may have been mistaken in its conclusion that his attendance record was poor. However, in this instance, Mack was entitled to rely upon its own records provided that all classes of potential employees were subject to evaluation on the same basis. As the Third Circuit Court of Appeals has noted:

> The [Civil Rights Act of 1964] prohibits only 'discrimination'. Therefore, consideration of the practices of the [employer] toward the plaintiff must be evaluated in light of its practices toward the allegedly more favored group.... *Kunda v. Muhlenberg College*, 621 F.2d 532, 538 (3d Cir.1980).

Here, the plaintiff has addressed only Mack's treatment toward himself. While that is sufficient to establish a prima facie case, it is not sufficient to carry the ultimate burden of proof. In the face of Mack's record evidence of even-handed treatment, Morales can only assert that he has "heard" otherwise. The only issue of fact that he has raised is whether Mack was mistaken in its decision not to rehire him.

Morales asserts that he was intentionally bypassed because of his race and national origin. However, he has not shown that he was refused rehire because Mack intentionally discriminated against him on the basis of race. Other Hispanics with satisfactory attendance records were offered reemployment with Mack. Morales has not suggested that Mack did not offer reemployment to those not considered an attendance or discipline problem. Nor has he sought to show, or suggested that he could show, that Mack made similar mistakes in the records of those Hispanics not offered reemployment as was arguably made in his case. Likewise, he has not suggested that similarly situated non-Hispanics former employees, *i.e.*, those who sustained an injury within the final twelve months of their employment with Mack, were treated more favorably with respect to their attendance records.

Finally, Mack has provided uncontroverted evidence that it had a policy of encouraging minority recruitment at the time Morales was rejected. Ray Spencer of the Private Industry Council, a private, nonprofit corporation engaged in training and placing workers, testified at his deposition that Mack specifically instructed him to target minorities for recruitment. (Spencer Deposition at 22). Given Mack's prior decision to offer new employment to its former employees because of their experience with the company, (Windish Deposition at 9), its policy of minority recruitment and the absence of any other evidence of discrimination, a jury could not infer that Mack's refusal to hire Morales is attributable to racial or ethnic prejudice.

**3.** Morales purports to raise several issues of material fact by way of an affidavit. However, as Mack points out, much of the affidavit consists of hearsay only or of asserted "facts" of which Morales has no personal knowledge, *e.g.*, that his attendance record was better than that of another employee and that Mack had an agreement with the Union to rehire former employees. Consequently, the affidavit is not suffi-cient to raise material issues of fact that preclude summary judgment.

**4.** Plaintiff has not alleged or argued that Mack's policy with respect to attendance had a disparate impact upon the minority members of the pool of potential employees from which Mack was hiring. Therefore, we do not address that theory of liability.

Since Title VII is a remedy for discrimination, not error, Mack is entitled to summary judgment on Morales's Title VII claim.

 Count II of the complaint alleges breach of contract. However, Morales's own deposition testimony, as well as that of a company representative, establishes that Mack unilaterally decided to offer new employment to former employees whose seniority rights had expired, that the Union had not bargained for that policy and that it was not a matter of contract between Mack and UAW. (Morales Deposition at 52, Windish Deposition at 7). The only purported "evidence" of a contract to re-hire former employees is plaintiff's affidavit in which he asserts that someone told him there was an agreement between Mack and the Union and on that basis he believes that a contract existed. In light of his contradictory deposition testimony, that affidavit falls far short of raising a material issue of fact with respect to the existence of a contract. Thus, it is clear that Mack is entitled to summary judgment on Count II of the complaint as well.