Paula M. HOWARD

v.

**PINE FORGE ACADEMY, PINE FORGE, PENNSYLVANIA, Columbia Union Conference of the Seventh Day Adventist, Meade C. Van Putten, Chairman of Board of Trustees of Pine Forge Academy and Wilbert A. Cheatham, Principal of Pine Forge Academy.**

Civ. A. No. 85–2981.

United States District Court,
E.D. Pennsylvania.

Nov. 25, 1987.

Alfred Hemmons, Allentown, Pa., for plaintiff.

Glenn E. Culpepper, Takoma Park, Md., Jeffrey A. Mahle, Pottstown, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

In December, 1982, plaintiff Paula Howard had written to Pine Forge Academy, a Seventh Day Adventist secondary school located in Berks County, Pennsylvania, seeking an unspecified position. Wilbert Cheatham, the Academy's principal, offered her the position of Registrar/Administrative Assistant in early August, 1983, which she accepted. Howard moved to Pine Forge from Indiana to begin work in September, 1983.

In January, 1984, problems developed between Howard and Cheatham, her supervisor, culminating in a letter to her on February 14, announcing Cheatham's intention to terminate her employment for insubordination. (Appendix to Memorandum in Support of Motion by Defendants, Pine Forge Academy, Meade C. Van Putten and Wilbert A. Cheatham, for Judgment on the Pleadings or in the Alternative for Summary Judgment, Doc. # 28, Exh. 1). Later, Cheatham implicitly admitted that he had no authority to terminate her employment, but could only recommend her termination to the Pine Forge Academy Board of Trustees. (*Id.*, Exh. 7). On March 22, the Academy Board of Trustees voted to terminate Howard's services at Pine Forge and so notified her by a letter dated March 23, 1984. (*Id.*, Exh. 8).

In May, 1985, after receiving a right to sue letter from the EEOC, Howard filed this action in which she alleges numerous discriminatory practices on the part of Pine Forge Academy, Columbia Union Conference of Seventh Day Adventists, Cheatham and Meade Van Putten, Pine Forge Academy Board of Trustees Chairman. Count I lists charges of pervasive and all-encompassing race and sex discrimination allegedly practiced by all defendants. Count II alleges that the practices alleged in Count I constitute violations of 42 U.S.C. §§ 1981, 1983, 1985(1)–(3) and 1986. In Count III Howard alleges that her supervisor subjected her to harassment in the form of unwanted sexual advances and refusal to supervise her work and assign tasks when she rebuffed the advances, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. In Count IV, Howard alleges that Pine Forge Academy's advice to prospective employers that she was fired for insubordination constituted an unlawful employment practice under Title VII. Count V alleges breach of contract, a State law claim.

All defendants moved for judgment on the pleadings or for summary judgment in accordance with an order of the Magistrate setting deadlines for the filing of such motions and responses thereto. On July 10, 1987, two weeks after the date set in the Magistrate's order for responses to the motions for summary judgment, this Court granted defendants' motions as unopposed, having had no word from plaintiff with respect to whether she intended to respond to the motions. Subsequently, on July 29, 1987, plaintiff moved for reconsideration of the order granting summary judgment and appended a substantive response to the motions.

■ Both sides to this litigation expended much time and energy to convince the Court that their respective positions relating to the plaintiff's failure to file a timely response to defendants' motions are justified. Thus, defendants contend that plaintiff's counsel's conduct was contumacious in disregarding an order of the Court by attempting to have them agree to an extension of time for filing a response to their motions. Plaintiff's counsel contends that defendants' counsel orally agreed to his proposed stipulation, but later refused to sign it. There is no need to resolve this conflict among counsel. While we agree with defendants that plaintiff should have sought a modification of the Magistrate's order at the outset, we will not allow a judgment to stand on a technical failure to comply with an order in one instance. Accordingly, the Court has given full consideration to the defendants' motions and plaintiff's response on the merits. We have concluded, however, that defendants'

motions should be granted and thus the judgment previously entered will be reaffirmed and reentered for the reasons which follow.

Initially, a review of the parties' respective burdens on summary judgment is in order. The standards set forth in Fed.R. Civ.P. 56(c) are well known, *i.e.*, that, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". Application of those standards, however, has not always been consistent. Fortunately, the United States Supreme Court has recently provided significant guidance in determining when those standards have been met by the moving party.[1]

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the court emphasized that while the trial court must not engage in fact-finding when considering a summary judgment motion, the party opposing the motion bears the burden of coming forward with sufficient evidence to support a jury verdict in his or her favor. Where there is a disputed issue of fact, the fact must be material, *i.e.*, must be essential to the maintenance of the claim or defense upon which the nonmovant bears the burden of proof at trial. All evidence produced by the nonmovant will be accepted by the Court as true, and all reasonable inferences therefrom will be drawn in favor of the nonmovant. The Court should not lose sight of the purpose of summary judgment, "to isolate and dispose of factually unsupported claims or defenses". *Catrett*, 477 U.S. at ——, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

■ Applying the foregoing standards to Count I of the complaint, it is readily apparent that judgment must be granted in favor of all defendants on the allegations contained therein. Plaintiff has produced absolutely no evidence of discriminatory hiring, firing or assignment of personnel on the basis of race or sex. When asked to give specific examples of discriminatory employment practices, plaintiff stated that she was denied unemployment compensation contrary to the Columbia Union Conference Education Code and that she "believed" that another employee "expressed" to her that the other employee was also denied unemployment compensation. Almost immediately, however, Howard admitted that she did not know whether the other employee had actually applied for compensation. (Deposition of Paula Howard at 51–53, Appendix to Doc. # 28.) Even if the denial of unemployment compensation could be considered evidence of race or sex discrimination in the context of this case, defendants had little to do with it. True, they opposed plaintiff's claim, but it was as a result of a decision by the Office of Employment Security, affirmed by a Referee after a hearing, that the claim was denied. (See, Exh. 10 to Doc. # 28).

■ In all other respects, when asked about specific allegations of the complaint, plaintiff could only reiterate that she was not given a job description while other employees were. She had no information about the pervasive practices alleged in the complaint, nor did she produce any other evidence thereof in response to defendants' motions. Plaintiff attempted to compare herself to the only white employee at Pine Forge Academy while she was employed there, but she could specify only two instances of different treatment: a suggestion by Cheatham that Howard not wear her wedding ring; and reimbursement of mileage to the white employee, an Hispanic woman who taught Spanish part-time at the Academy. Howard admits, however, that she continued to wear her wedding ring as did the Spanish teacher and at least one other employee. The other employee was necessarily black, since, as noted, there was only one white employee at the

---

1. We note that a grant of judgment on the pleadings is not technically correct here where matters outside of the pleadings, in the form of exhibits, depositions and affidavits, have been submitted by defendants and considered by the Court. Fed.R.Civ.P. 12(c).

Academy during the time when plaintiff alleges that the discrimination against her took place. Moreover, the suggestion regarding the wedding band had a religious rather than a racial or sexual basis according to the unchallenged statement of the defendants. (See, Affidavit of Meade C. Van Putten, Appendix to Doc. # 28). Finally, there can be no inference of race or sex discrimination drawn from the payment of mileage to one female employee who is not black when the black female employee complaining of the practice lived on the Academy campus in housing provided by the Academy and thus incurred no transportation costs.

■ Finally, assuming that the few instances of different treatment identified by plaintiff are discriminatory, plaintiff made no attempt to demonstrate that they were in any way related to her firing.

Although we have concluded that plaintiff has failed to support at all the allegations of Count I, entitling all defendants to summary judgment, there is technically no claim made in Count I. Rather, plaintiff alleges, in Count II, that the allegations made in Count I violate 42 U.S.C. §§ 1981, 1983, 1985(1)–(3) and 1986.[2] There are several problems inherent in these theories of liability which the Court will address separately for each section of the statutes cited.

■ With respect to § 1981, it is true that private employment discrimination is within the purview of this statute. *Young v. International Telephone & Telegraph Co.*, 438 F.2d 757 (3d Cir.1971). The only cognizable claims under the statute, however, are those of discrimination on the basis of race or alienage. *Holton v. Crozer–Chester Medical Center*, 419 F.Supp. 334 (E.D.Pa.1976). Here, we have already determined that plaintiff has failed to adduce any evidence whatsoever of race discrimination. Consequently, defendants are entitled to summary judgment as to plaintiff's § 1981 claim.

■ To maintain a § 1983 claim, plaintiff must allege and prove that the defendants deprived her of a constitutional or statutory right under color of State law. Plaintiff contends that defendants are State actors, presumably upon the theory that the State has delegated its authority to educate children to the defendants. This presumption emanates solely from the Court; plaintiff has failed to articulate a basis for her argument that State action exists. We conclude, however, that there is no color of State law under the circumstances here present. Pine Forge Academy and the Columbia Union Conference (and necessarily, the individual defendats) are purely private parties who maintain educational institutions in the Seventh Day Adventist religious traditions. Presumably, defendants and their educational institutions comply with State law requirements regarding the length of the school year, curriculum, etc., along with other public and private schools. In *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the Supreme Court concluded that a private school which received substantial public funds through contracts with the State to educate certain special needs children, for whose education public school districts would otherwise have been responsible, was not a State actor for § 1983 purposes. There is no indication here that any public funds are received by the defendants, nor does there appear to be any other State involvement in their operations, other than the aforementioned State regulations pertaining to all schools. Consequently, if the school in *Kohn* was not a State actor, it is difficult to understand how these defendants could be so considered. We conclude, therefore, that plaintiff's § 1983 claim must fail for lack of State action.

■ Plaintiff also contends that the actions and practices alleged in the complaint, specifically Count I, constitute violations of § 1985(1)–(3) as well. It is obvious that ¶¶ (1) and (2) are wholly inapplicable to any claim made in this action. Thus, the only

---

**2.** In order to give plaintiff the benefit of all possible theories of liability against defendants, we have analyzed the claims made in Count II as if they applied to the remaining counts of the complaint as well as to Count I.

possible basis for a § 1985 claim must be ¶ (3). While this statute provides a cause of action for civil conspiracies and may be asserted against private parties, the ability to use it as a basis for suit against such defendants is limited by the nature of the claim. As Justice Stevens explained in his concurring opinion in *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), only certain privileges and immunities of citizenship are constitutionally protected against private action. Others, such as due process of law and equal protection of the laws, are protected only against State action. In other words, there is no cause of action assertable against private parties for Fourteenth Amendment violations under § 1985(3), even if a conspiracy among them is established.

■■■ Moreover, as the majority concluded in *Novotny,* § 1985(3) is not available under any circumstances as an alternative means of redressing violations of Title VII. Thus, insofar as the practices alleged in Count I, or elsewhere in the complaint, and alleged in Count II to constitute violations of § 1985(3) are practices prohibited by Title VII or are meant to claim violations of the Fourteenth Amendment, they must fail under *Novotny.* Since we have concluded that plaintiff has not established a § 1985 claim, her § 1986 claim must also fall. *Lyon v. Temple University,* 507 F.Supp. 471 (E.D.Pa.1981).

■■■ We come, then, to the true gravamen of the complaint: plaintiff's allegations that her immediate supervisor, Cheatham, subjected her to sexual harassment in violation of Title VII. Here too, plaintiff has failed to establish a claim which can withstand defendants' summary judgment motions. In the first instance, it appears from the record that plaintiff has not satisfied the prerequisites for maintaining a Title VII claim in that her complaint to the EEOC was untimely. (See, Appendix to Doc. #28, Exh. 13, Right to Sue Notice stating that the claim could not proceed because of lack of jurisdiction due to untimely filing). Plaintiff has not addressed defendants' arguments that they are, therefore, entitled to judgment on the Title VII claims, leading to the conclusion that she recognizes the validity of their position on that issue. In any event, the filing of a timely EEOC complaint is necessary in order to maintain a Title VII action in the district court. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). As it is an issue upon which plaintiff will bear the burden of proof at trial, she is obliged to come forward with some evidence to counter defendants' challenge to the timeliness of her EEOC complaint. Under *Catrett* and *Anderson,* her failure to do so requires that judgment on the Title VII claims be granted to defendants.

■■■ Moreover, an examination of the substance of plaintiff's Title VII claims leads to the conclusion that the same result would obtain even if timeliness were not an issue. Under well-established principles for analyzing Title VII cases, the plaintiff must first make out a *prima facie* case of discrimination by showing that she was fired from a job for which she was qualified while others not in the protected class were treated more favorably. *Bellissimo v. Westinghouse Electric Corp.,* 764 F.2d 175 (3d Cir.1985). Although that is usually a burden easily borne, here even this first step is questionable. All other employees at Pine Forge Academy arguably qualified for the position from which the plaintiff was fired also belong to the protected classes in which she claims membership. In the context of a sexual harassment claim, however, strict adherence to the *Bellissimo* standard might render such grievances unredressable, in that a supervisor's unwanted attentions toward only one member of a protected class, leading to her loss of employment, would not be actionable so long as her replacement was also a member of the class. That result is inconsistent with the Supreme Court's view that sexual harassment which creates a "hostile or offensive" work environment is actionable under Title VII. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Plainly, if sexual har-

assment, absent adverse employment consequences, is actionable, such alleged harassment which leads to a loss of employment states a *prima facie* case.

■ Under *Bellissimo,* once a *prima facie* case has been established, the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for the firing. Here, there is ample evidence in the record to support the defendants' argument that Howard was fired for insubordination. Defendants have produced correspondence from Howard to both Cheatham and Van Putten, (See, appendix to Doc. #28, Exh. 4 and 5), in which Howard describes the incident that led to her problems with Cheatham, apologizes to him for her "uncontrollable behavior" (Exh. 4), and confirms to Van Putten that she did not return the keys to the office in which she was working when Cheatham requested that she do so and relocate to another office. (Exh. 5). Moreover, other exhibits produced by the defendants also support their contention that Howard was fired for insubordination. (See, *e.g.,* Appendix to Doc. #28, Exh. 1–3).

■ While plaintiff did relate certain incidents which might be termed harassment, assuming that plaintiff's subjective interpretation of these ambiguous encounters rendered them disturbing to her as she claims, she does not connect them to her firing nor suggest, other than in the complaint, that Cheatham suggested that her continued employment could be arranged as a *quid pro quo* for sexual favors. Thus, plaintiff has failed to demonstrate that the legitimate reason for her termination was pretextual, the final step in the *Bellissimo* analysis.

■ Since we have determined that there is no evidence of racial discrimination being practiced by the defendants, no State action to support a § 1983 action nor a § 1985(3) action based on the Constitution, that § 1985 may not be used as an alternative to a Title VII action and that plaintiff's Title VII action is not viable for the reasons given, judgment will be reaffirmed in defendants' favor on all of the federal claims. Ordinarily, we would then dismiss

the State claim for lack of jurisdiction. Here, however, there appears to be diversity of citizenship between the parties, although this was not a basis for the Court's jurisdiction over this matter. Neither the defendants nor the plaintiff, however, have addressed the State breach of contract claim in their briefs. We can only assume that plaintiff has abandoned it, especially since she repeatedly alluded to defendants' failure to offer her a contract in her deposition. Thus, we will reaffirm the judgment on that claim as well.