**Judith WOLK, Appellant,**

v.

**SAKS FIFTH AVENUE INC.**

No. 83–5334.

United States Court of Appeals, Third Circuit.

Argued Jan. 24, 1984.

Decided March 1, 1984.

Rehearing and Rehearing In Banc Denied March 27, 1984.

■■■■■■■■■■■

Robert B. Smith (argued), Leven Surloff Mendelson & Smith, Pittsburgh, Pa., for appellant.

John C. Grosz (argued), Joyce M. Perlmutter, Solinger Grosz & Goldwasser, P.C., New York City, for Saks Fifth Ave. Inc.; Edmund M. Carney, Rose, Schmidt, Dixon & Hasley, Pittsburgh, Pa., of counsel.

Before ADAMS, GARTH, Circuit Judges, and BROTMAN, District Judge.[*]

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The evolution of the common law is marked by the gradual emergence of new doctrine. The field of employment rights, particularly for employees formerly dismissible at will, requires special re-evaluation in light of present developments. This appeal requires us to turn our attention to the rapidly evolving common law governing employment relations and especially to the tort of wrongful discharge and the implied contractual guarantee of employment security.

In the present controversy, suit was originally brought in the Allegheny County Court of Common Pleas and then removed to federal district court by the out-of-state defendant on the basis of diversity jurisdiction. After extensive discovery was allowed on both counts, the district court held that no issue of material fact was in dispute and granted summary judgment for the defendant. In its view, the tort claim was precluded by state statutory remedies and, under Pennsylvania law, which concededly controls here, a unilaterally adopted employer's personnel manual could not create enforceable contractual rights for employees. This appeal followed.

### I.

The plaintiff is Judith Wolk, who was employed as a fashion director at the Saks Fifth Avenue store in Pittsburgh from June 1977 until her discharge in June 1981. According to her averments, Ms. Wolk's work while at Saks was satisfactory and won her high job performance ratings. She asserts that her problems began in August 1980 when the store hired a new supervisor. Wolk alleges that she was sexually approached on the job by this supervisor on two separate occasions[1] and then discharged in retaliation for her refusal to submit to his advances.

We are mindful of the seriousness of the problems of sexual harassment on the job. As more and more women are employed, the possibilities for discriminatory conduct, both subtle and overt increase. Innuendo, intimidation, and direct confrontation are obstacles to the integration and advancement of women in the workplace. The issue before this Court is not, however, whether sexual harassment resulting in dismissal from employment may be the predicate for a successful action against job termination. Rather, we must determine whether the state law tort and contract claims were, under the present circumstance, the proper legal avenues to challenge Wolk's dismissal. For the reasons set forth, we now affirm.

### II.

In *Novosel v. Nationwide Insurance Co.,* 721 F.2d 894 (3d Cir.1983), we elaborated upon the emergence of the tort of wrongful discharge under Pennsylvania common law. Applying the logic of *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (Pa.S.Ct.1974), we held "that Pennsylvania law permits a cause of action for wrongful discharge where the employment termination abridges a significant and recognized public policy." 721 F.2d at 898. A discharge in retaliation for the refusal by a

---

[*] Hon. Stanley S. Brotman, United States District Court for the District of New Jersey, sitting by designation.

1. Plaintiff alleges that two kissing episodes occurred in October 1980 and March 1981. App. at 74, 78.

woman employee to succumb to sexual advances would abridge a significant and recognized public policy against sexual discrimination in employment.

*Novosel,* however, must be understood against the backdrop of the limited role of a federal court sitting in diversity jurisdiction. While a federal court must be sensitive to the doctrinal trends of the jurisdiction whose law it applies, it is beyond the authority of a federal court in such circumstances to create entirely new causes of action. *See Becker v. Interstate Properties,* 569 F.2d 1203, 1206 (3d Cir.1977). Unlike *Novosel,* the issue before us today is not whether a wrongful discharge action may be maintained under state law, but rather the narrower one of determining whether such a common law action may be maintained in spite of the availability of other remedies under state law. As this Court pointed out in *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 912 (3d Cir. 1982), the "only Pennsylvania cases applying the public policy exceptions have done so where no statutory remedies were available."

There is no doubt that in the present situation a state law cause of action was available under the Pennsylvania Human Relations Act, Pa.Stat.Ann. tit. 43 §§ 951 *et seq.* (Purdon 1964 & Supp.1982) [hereinafter PHRA],[2] as well as potentially under a federal Title VII claim. The PHRA further provides that its

... procedure ... *shall, when invoked,* be exclusive and the final determination ... *if* ... [plaintiff] institutes *any action* ... without resorting to the procedure provided in this Act, [plaintiff] may not

subsequently resort to the procedure herein ...." (emphasis added)

Section 959(a) (Supp.1982) of the PHRA also provides an administrative remedy for discrimination:

[A]ny individual claiming to be aggrieved by an alleged unlawful discriminatory practice *may* make, sign, and file with the Commission a verified complaint. (emphasis added)

PHRA § 962(c) (Supp.1982) adds:

In cases involving a claim of discrimination, if a complainant invokes the procedure set forth in this act that individual's right of action in the Courts of the Commonwealth *shall* not be foreclosed. (emphasis added)

Each of these provisions makes clear that if the PHRA were invoked its remedies would be exclusive. Ms. Wolk argues that a careful reading of the statute shows that the invocation of the PHRA is optional and that the exclusivity provisions would therefore be operative only if the plaintiff chose to pursue the statutory remedies.

This Court first addressed the relation between the PHRA and common law remedies in *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 195 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). *Bonham* declared that the PHRA provided "the exclusive remedy for vindication of the right to be free from discrimination based on age." This interpretation of the exclusivity of the PHRA appears to have been tacitly rejected by the Pennsylvania Supreme Court in *Fye v. Central Transportation Inc.,* 487 Pa. 137, 140–41, 409 A.2d 2, 4 (1979), which declared that "the General Assembly did not withdraw the other remedies that might be available depending upon the nature of the injury

---

**2.** Section 955 of the PHRA in its relevant portion states:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

sustained." Nevertheless, in *Bruffett,* this Court again found:

> [T]he procedures mandated in the PHRA must be strictly followed.... If a common law action for the same claims were recognized, it would give the claimant an opportunity to circumvent the carefully drafted legislative procedures.... [T]he PHRA embodies a discrete, comprehensive administrative procedure, including conciliation and negotiation.

692 F.2d at 919. *But see id.* at 920–24 (Gibbons, J., dissenting) (*Bruffett* majority misread *Fye* and was at odds with the development of alternative common law remedies in the state courts).[3]

We therefore affirm the district court's determination that in Pennsylvania no tort cause of action under the common law was available to Ms. Wolk. We do not in any way address the merits of her claim or prejudice her invocation of any statutory remedies that might be available.

### III.

In addition to her claim of wrongful discharge sounding in tort, Ms. Wolk asserted that her discharge violated the contractual guarantees of employment contained in the employer's personnel manual. The district court declined to accept this contention:

> [P]laintiff's complaint alleges no specific duration or term for her employment. Moreover, there is no written contract, nor any other document, in the record to indicate to the Court that there was a specific term or duration of plaintiff's employment. In such cases, Pennsylvania law presumes that an employee serves at the pleasure of an employer and that the employment relationship may be terminated by either party, at any time, absent a specific term or duration.

*Wolk v. Saks Fifth Avenue,* No. 82–874 (W.D.Pa. April 8, 1983) slip op. at 8. The rejection of the contract claim as a matter of law does not comport with the ruling in

*Novosel* that an employer's "custom, practice or policy [can] create[ ] either a contractual just cause requirement or contractual procedures by which [a] defendant [must] abide...." 721 F.2d at 902–903. We concluded in *Novosel* that the existence of an enforceable unilateral contract created by the employer's personnel manual was an issue of fact for the jury to determine.

■ Unlike *Novosel,* however, the district court in the present case did not dismiss the contract claim outright. Rather, the court allowed ample discovery into the personnel procedures at Saks stores. In order for a summary judgment ruling to survive scrutiny, whether or not it relied on a misreading of the law, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). This Court adheres to the position, which we have repeated on numerous occasions, that "summary judgment is never warranted except on a clear showing that no genuine issue of any material fact remains for trial..." *Suchomajcz v. Hummel Chemical Company,* 524 F.2d 19, 24 (3d Cir.1975).

■ Plaintiff's brief, however, responds to the district court ruling as if it were a Rule 12(b) dismissal rather than a Rule 56 summary judgment:

> [T]he granting of summary judgment on the breach of contract claim by the lower court was in error since Appellant stated a cause of action against Appellee on the basis she was fired in contravention of the personnel policies that created a contractual relationship between the parties.

Appellant's brief at 15. Contrary to this assertion, there is no inconsistency between summary judgment and the recognition that a cause of action has been pleaded. *Sound Ship Bldg. Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99–100 (3d Cir.1976). De-

---

**3.** Under Internal Operating Procedure of the Third Circuit, Chapter 8, C, reported panel opinions are binding precedent on subsequent panels. Thus, we are bound by the decision of the *Bruffett* majority that the availability of a PHRA remedy precludes other common law remedies even where the statute is not invoked.

spite the discovery which the district court permitted, Ms. Wolk does not specify the contractual rights that were allegedly abridged. The parties dispute whether the personnel manual of Saks covers only "rank and file" employees or extends to management level personnel such as the plaintiff. Even assuming that Ms. Wolk is covered by the manual, however, the sole restriction on employment termination in the manual is the requirement of warning and a personal discussion prior to discharge. App. at 41. In her deposition Ms. Wolk conceded that she had in fact been warned of work-related problems and spoken to by supervisors as required by the company's discipline procedure. App. at 94.

Ms. Wolk proposes that this Court follow "[t]he clear trend in the law today [which] is to require of the employer an obligation to discharge an at-will employee in good faith and with good cause." App.Br. at 19. As we stated in *Novosel*, whatever the merits of this position, there is no indication that the Pennsylvania courts have as yet fashioned or indicated their intention to fashion a uniform just cause requirement for all discharges. Absent such a declaration on the part of the state courts, a federal tribunal sitting in diversity is not empowered to take this step for the state courts.

### IV.

The judgment of the district court will be affirmed, each side to bear its own costs.