536 A.2d 1375

Jeffrey CLAY and Mary Clay, Individually and as Husband and Wife, Appellants,

v.

ADVANCED COMPUTER APPLICATIONS, INC., Bjorn J. Gruenwald, Individually and as President of Advanced Computer Applications, Inc., and Richard Baus, Appellees.

Superior Court of Pennsylvania.

Argued Sept. 16, 1987.

Filed Jan. 28, 1988.

498

500

Lee D. Rockafellow, Morrisville, for appellants.

Alfred J. Monte, Jr., Doylestown, for Advanced Computer, appellees.

Dianne C. Magee, Doylestown, for Baus, appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, DEL SOLE, MONTEMURO, TAMILIA, KELLY, POPOVICH and JOHNSON, JJ.

MONTEMURO, Judge:

Appellants, Jeffrey Clay and Mary Clay, challenge the dismissal of their claims against appellees, Bjorn J. Gruenwald and Richard Baus. We affirm in part and reverse in part the order of the Bucks County Court of Common Pleas.

The Clays filed this action to recover damages for wrongful discharge, breach of an implied contract of employment and intentional infliction of emotional distress. In their complaint, they alleged that Bjorn Gruenwald had terminated their employment with Advanced Computer Applications, Inc. solely because Mary Clay had rebuffed the sexual advances of Richard Baus, a management-level employee. The complaint named as defendants (1) Advanced Computer; (2) Bjorn J. Gruenwald, both individually and as president of Advanced Computer, and (3) Richard Baus. On September 20, 1985, an attorney representing both Advanced Computer and Mr. Gruenwald filed preliminary objections to the Clays' complaint. The preliminary objections contained a "motion to strike Bjorn J. Gruenwald as an individual defendant" and a "demurrer." [1] Both the "motion to strike" and the "demurrer" rested on the same two theories. The first was that Mr. Gruenwald had acted as an agent of Advanced Computer, not as an individual, in discharging the Clays. The second was that none of the allegations in the complaint were sufficient to state a cause

1. The preliminary objections also contained a motion that challenged the personal jurisdiction of the trial court over Mr. Baus. The reasons for this motion remain a mystery. The attorney who filed it had entered an appearance for Advanced Computer and Mr. Gruenwald only. The motion itself indicated that the attorney was acting "on behalf of Advanced Computer Application, Inc. and Bjorn J. Gruenwald." Moreover, on October 3, 1985, a separate attorney entered an appearance for Mr. Baus. We find the motion particularly odd because the dismissal of Mr. Baus as a co-defendant in this case would only have sabotaged the defense of Advanced Computer and Mr. Gruenwald.

of action against Mr. Gruenwald even if he had acted as an individual.

On October 4, 1985, an attorney representing Mr. Baus also filed preliminary objections to the complaint. These objections contained five "demurrers" and a "petition raising a question of lack of personal jurisdiction." The "petition" challenged the method by which the sheriff served process against Mr. Baus. The "demurrers" in sum declared that the allegations in the Clays' complaint were insufficient to state a cause of action against Mr. Baus for either wrongful discharge, breach of contract or intentional infliction of emotional distress. The trial court decided these preliminary objections together with those filed by the attorney for Advanced Computer and Mr. Gruenwald.

In an order dated April 7, 1986, the court referred to the various preliminary objections collectively as "motions to dismiss." The order simply granted the "motions" without elaboration. In a subsequent opinion, however, the court offered three grounds for its action. First, the court reasoned that it lacked subject matter jurisdiction over any of the wrongful discharge claims because the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, provide the exclusive remedy for grievances arising from sexual discrimination in the workplace. Second, the court concluded that the Clays had failed in their complaint to state a cause of action for breach of contract. The conclusion apparently applied to both Mr. Baus and Mr. Gruenwald, although only Mr. Baus specifically challenged the sufficiency of the breach of contract allegation. The order granted both "motions to dismiss" without distinguishing between the two. Moreover, the parties in their arguments on appeal have assumed that the trial court meant to dismiss the contract claim against Mr. Gruenwald as well as the one against Mr. Baus. Third, the court also concluded that the Clays had failed to state a cause of action for intentional infliction of emotional distress. Again, this apparently applied to both Mr. Gruenwald and Mr. Baus

alike.[2]

On appeal, the Clays raise the following issues:

1. Did the trial court err in dismissing the wrongful discharge claims for want of subject matter jurisdiction when none of the parties raised subject matter jurisdiction as a ground for dismissal?

2. Do either the Pennsylvania Human Relations Act or Title VII of the Civil Rights Act of 1964 bar common law tort actions for wrongful discharge in cases that arise from alleged sex discriminating?

3. Did the trial court act on its own initiative, rather than on the preliminary objections actually raised by the parties, when it dismissed the breach of contract and intentional infliction of emotional distress claims against Mr. Gruenwald and Mr. Baus?

4. Did the trial court err in concluding that the Clays failed in their complaint to state causes of action against Mr. Gruenwald and Mr. Baus for breach of contract and intentional infliction of emotional distress?[3]

We will address these issues in order.

■■■■ The Clays contend that the trial court could not raise lack of subject matter jurisdiction *sua sponte* as a ground for dismissal. We disagree. A court necessarily

**2.** The trial court did not address the agency theory that Mr. Gruenwald offered in his preliminary objections. Nor did it address Mr. Baus' allegations concerning service of process.

**3.** The Clays actually list seven issues in the "statement of questions involved" section of their brief. The "argument" section of their brief, however, consists of only one part. Pennsylvania Rule of Appellate Procedure 2119(a) requires the appellant to divide his or her argument "into as many parts as there are questions to be argued." This is not the only rule that counsel for the appellants in this case has ignored. Appellants' Brief also fails to conform to Pa.R.A.P. 124(a)(4), 2111(a)(5), 2116(a), 2118, 2119(c) and 2172(a)(4). We should not lightly countenance such flagrant disregard of our rules. This court can quash or dismiss an appeal if defects in the brief are "substantial." *See* Pa.R.A.P. 2101. Although the numerous defects in the Clays' brief have impeded review of this appeal, the interests of justice and judicial economy weigh against summary dismissal. A review of the "argument" section of the brief convinces us, however, that the Clays have raised four issues, not seven.

has the authority to determine on its own initiative whether it has jurisdiction to decide a controversy. *See Hanik v. Pennsylvania Power Co.*, 308 Pa.Super. 352, 454 A.2d 572 (1982); *Marcus v. Diulus*, 242 Pa.Super. 151, 363 A.2d 1205 (1976). The action or inaction of the parties cannot bestow subject matter jurisdiction upon a court that otherwise lacks it. *See T.C.R. Realty, Inc. v. Cox*, 472 Pa. 331, 372 A.2d 721 (1977); *Cheng v. Cheng*, 347 Pa.Super. 515, 500 A.2d 1175 (1985). Our rules of procedure therefore provide that either the parties or the court *sua sponte* can raise lack of subject matter jurisdiction at any time. *See* Pa.R.C.P. 1032(2). *See also LeFlar v. Gulf Creek Industrial Park No. 2*, 511 Pa. 574, 515 A.2d 875 (1986); *Cheng v. Cheng, supra; Shields v. C.D. Johnson Marine Service*, 342 Pa.Super. 501, 493 A.2d 701 (1985). In the case now before us, the trial court properly addressed the jurisdiction issue even though the parties never raised it in their preliminary objections.

We nonetheless agree with the Clays that neither the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*, nor Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, deprives the trial court of jurisdiction over the Clays' wrongful discharge causes of action. The Clays had each sought relief for wrongful discharge against each of the three defendants. Their complaint offered three theories in support of these claims. First, the Clays maintained that their discharge "violated" the "public policy" of this Commonwealth. Second, they charged that the defendants acted with "malice." Third, they indicated that the defendants breached an "implied covenant of good faith and fair dealing."[4] Although the trial court in its opinion mentioned

---

**4.** Pennsylvania courts have recognized a cause of action in tort for wrongful discharge in two kinds of cases: (1) when the discharge contravenes some clearly articulable "public policy" and (2) when the discharge was motivated by a specific intent to harm the employee. *See Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974); *Gillespie v. St. Joseph's University*, 355 Pa.Super. 362, 513 A.2d 471 (1986); *Tourville v. Inter–Ocean Ins. Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986); *McCartney v. Meadowview Manor, Inc.*, 353 Pa.Super. 34, 508 A.2d 1254 (1968); *Darlington v. General Electric*, 350

only "good faith and fair dealing" specifically, it appears to have concluded that "statutory remedies" exclude any "tort cause action" for wrongful discharge, regardless of the underlying theory. In so concluding, the trial court has misconstrued the Human Relations Act and Title VII of the Civil Rights Act.

 Section 962 of the Human Relations Act provides in part as follows:

(b) Except as provided in subsection (c), nothing contained in this act shall be deemed to repeal or supersede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this Commonwealth relating to discrimination because of race, color, religious creed, ancestry, age, sex, national origin or handicap or disability, but as to acts declared unlawful by section five of this act the procedure herein provided shall, *when invoked,* be exclusive and the final determination therein shall exclude any other action, civil, or criminal, based on the same grievance of the complainant concerned. *If such complainant institutes any action based on such grievance without resorting to the procedure provided in this act, he may not subsequently resort to the procedure herein....*

(c) In cases involving a claim of discrimination, *if a complaint invokes the procedures set forth in this act,* that individual's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complain-

Pa.Super. 183, 504 A.2d 306 (1986). The courts have yet to recognize, however, a cause of action in tort for breach of an "implied covenant of good faith and fair dealing." The term "implied covenant" suggests that the theory would better support a cause of action on contract. In fact, the phrase "good faith and fair dealing" derives from the Restatement (Second) of Contracts § 205 (1981) and Section 1–203 of the Uniform Commercial Code, 13 Pa.C.S.A. § 1203. Nonetheless both the Clays and the trial court appear to have treated this "breach" as a theory in support of the wrongful discharge claim. We offer no opinion here on the merits of the wrongful discharge claims because the trial court never reached the issue.

ant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act.

43 P.S. § 962(b) and (c) (emphasis added). Subsection (b) of this provision plainly affords the aggrieved party an election of remedies. The party can opt either to pursue relief under the Human Relations Act or to pursue whatever other avenues are available, including "civil" actions. *See Fye v. Central Transportation Inc.*, 487 Pa. 137, 409 A.2d 2 (1979); *Daly v. School District of Darby Twp.*, 434 Pa. 286, 252 A.2d 638 (1969). Once the party elects his or her remedy, the chosen path becomes exclusive. *See Fye, supra.* The General Assembly did not intend to bar judicial remedies for discrimination in the workplace. It sought rather to address "the undesirability of allowing the person aggrieved to commence several different actions for relief." *Id.*, 487 Pa. at 140, 409 A.2d at 4.[5] Section 962 therefore prevented the Clays from pursuing both an administrative and a judicial remedy in the present case. It did not, however, foreclose their right to choose at the outset between the courts or the Human Relations Commission.

 Moreover, subsection (c), which the General Assembly added to Section 962 in 1974, expands the rights afforded by subsection (b). It allows the alleged victim of discrimination to seek judicial relief even though he or she has elected to invoke his or her administrative remedies. If the aggrieved party has not obtained relief from the Human Relations Commission within one year, he or she can then

5. The trial court relied upon *Wolk v. Saks Fifth Avenue*, 728 F.2d 221 (3rd Cir.1984). A federal court's interpretation of state law, however, does not bind this court. *See Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) ("state courts are the principal expositors of state law"). Moreover, *Wolk* lacks even persuasive authority. The *Wolk* court ignored the reasoning of our supreme court in *Fye v. Central Transportation Inc., supra,* and looked instead to one of its own cases to guide its interpretation of the Human Relations Act. We believe the court would have reached a different result had it applied the *Fye* case.

pursue an action, "in the courts of the Commonwealth." *See Baker v. Human Relations Commission,* 507 Pa. 325, 489 A.2d 1354 (1985). Despite appellees' suggestion to the contrary, subsection (c) does not condition the right to judicial relief in all discrimination cases upon the filing of a complaint with the Human Relations Commission. The provision applies by its own terms only to those complainants who have elected the administrative avenue and have not obtained relief. Any other reading of Section 962 would require us to distort the plain language of the Act. The Human Relations Act therefore does not deprive the trial court of jurisdiction over the Clays' wrongful discharge actions.

In holding that relief is not exclusive to litigants under the Act, we necessarily overrule in part our previous decision in *Householder v. Kensington Manufacturing Co.,* 360 Pa.Super. 290, 520 A.2d 461 (1987).[6] In *Householder,* appellant sought to recover damages on the ground that her employer had discriminated against her because of a physical disability. A panel of this court upheld the trial court's finding that the Human Relations Act preempted tort actions for wrongful discharge based on discrimination. As our decision herein makes clear, the trial court erred in deciding not to exercise jurisdiction.

■ Nor does Title VII of the Civil Rights Act thwart the exercise of jurisdiction in this case. The United States Supreme Court established over a decade ago that "[d]espite Title VII's range and its design as a comprehensive solution for the problem of invidious discriminating in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975). Our research indicates that *Johnson*

6. *Householder* also stands for the proposition that even if the Human Relations Act does not afford the exclusive remedy, Pennsylvania Courts do not recognize a cause of action for wrongful discharge based on handicap discrimination.

continues to reflect the law under Title VII. None of the cases cited by the trial court indicate otherwise.

Although the court refused to exercise jurisdiction over the causes of action in tort for wrongful discharge, it addressed the breach of contract and intentional infliction of emotional distress claims on their merits. The court in effect sustained a demurrer in favor of Mr. Gruenwald and Mr. Baus on both claims. In their brief on appeal, the Clays suggest that the court acted on its own initiative, rather than in response to the preliminary objections actually filed by the parties. We disagree.

A court certainly cannot sustain a demurrer in favor of a party that has not demurred. *See Luitweiler v. Northchester Corp.,* 456 Pa. 530, 319 A.2d 899 (1974). *See also Galdo v. First Pennsylvania Bank, N.A.,* 250 Pa.Super. 385, 378 A.2d 990 (1977) (order striking joinder complaint improperly included party who had not filed preliminary objections).[7] In the present case, however, both Mr. Gruenwald and Mr. Baus included demurrers among their other preliminary objections. Mr. Gruenwald objected on the ground that the complaint lacked "sufficient allegations ... to state a cause of action against Bjorn Gruenwald in an individual capacity." He therefore requested "that a demurrer be granted on behalf of Bjorn J. Gruenwald individually." Mr. Baus used similar language in his objections, although he addressed the wrongful discharge, breach of contract and intentional infliction of emotional distress claims separately.

We recognize that Pa.R.C.P. 1028(a) requires parties "to state specifically the grounds relied upon" for any preliminary objection and that Mr. Gruenwald and Mr. Baus were far from specific in this case. Use of boilerplate allegations defeats the primary purpose of pleading under

---

7. A demurrer simply challenges the sufficiency of the complaint to state a cause of action against the demurring party. *See Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); *Cummins v. Firestone Tire & Rubber Co.,* 344 Pa.Super. 9, 495 A.2d 963 (1985). It does not question the authority of the court to hear and decide the controversy and therefore is not a matter that the court should raise *sua sponte.*

our rules of procedure. Pleadings, including preliminary objections, ideally should clarify the issues that divide the parties. *See* 3 Stand.Pa.Practice 2d § 16:2 (1981). The Clays, nevertheless, failed to call the lack of specificity to the attention of the trial court. A party faced with a preliminary objection that fails to conform to the specificity requirements of Rule 1028(a) must raise the defect by filing a preliminary objection of his or her own. *See Samuels v. Hendricks,* 300 Pa.Super. 11, 445 A.2d 1273 (1982). This objection can take the form of either a motion to strike under Pa.R.C.P. 1017(b)(2) or a motion for a more specific pleading under Pa.R.C.P. 1017(b)(3). *Id.* The party waives any procedural defect by failing to file a preliminary objection to the defective preliminary objection. *See Duquesne Slag Products Co. v. Lench,* 490 Pa. 102, 415 A.2d 53 (1980); *Rufo v. Bastian–Blessing Co.,* 417 Pa. 107, 207 A.2d 823 (1965); *Samuels v. Hendricks, supra; National Recovery Systems v. Frebraro,* 287 Pa.Super. 442, 430 A.2d 686 (1981). We therefore find that the trial court in this case properly considered on their merits the preliminary objections of Mr. Gruenwald and Mr. Baus.

On the merits, moreover, we agree with the court that the Clays failed to state causes of action against Mr. Gruenwald and Mr. Baus for breach of contract and intentional infliction of emotional distress. In reviewing the complaint, we have regarded all well-pleaded facts as true and have given the Clays the benefit of all favorable inferences that we would fairly deduce from these facts. *See Mazzagatti v. Everingham,* 512 Pa. 266, 516 A.2d 672 (1986); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). These facts, however, would not entitle the Clays to judicial relief even if true.

In support of their breach of contract claim, the Clays alleged that Advanced Computer hired them "on a regular full time basis for the purpose of long-term employment and career advancement." The Clays also allege that they "accepted the positions offered" and "ceased ... looking for other gainful employment" in reliance upon "oral

statements of the Defendant corporation." More specifically, they claimed that several months after they began working for Advanced Computer they informed Mr. Gruenwald of their plan to purchase a new home. Mr. Gruenwald, according to the Clays, not only encouraged the purchase but represented that "there were no problems with job security." The Clays insist that these facts are sufficient to show an "implied in fact" employment contract. They apparently believe that this "contract" overcomes the presumption of at-will employment. We disagree.

Pennsylvania courts have long recognized the rule that an employer may discharge his or her employees at any time for any or no reason, absent a statutory or contractual provision to the contrary. *See Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974); *Henry v. Pittsburgh & Lake Erie Railroad Co.,* 139 Pa. 289, 21 A. 157 (1891); *Veno v. Meredith,* 357 Pa.Super. 85, 515 A.2d 571 (1986); *Martin v. Capital Cities Media, Inc.,* 354 Pa.Super 199, 511 A.2d 830 (1986); *Darlington v. General Electric,* 350 Pa.Super. 183, 504 A.2d 306 (1986); *Banas v. Matthews Int'l Corp.,* 348 Pa.Super. 464, 502 A.2d 637 (1985) (*en banc*). The so-called "at-will rule" reflects the belief that the intimacy of the master-servant relationship and the need for managerial discretion defy judicial scrutiny. *See Veno v. Meredith, supra; Darlington v. General Electric, supra.* Although we have questioned the viability of this belief given the more regulated environment of modern employment relationships, we have repeatedly reaffirmed the at-will rule in recent years. *See Darlington v. General Electric, supra; Banas v. Matthews Int'l Corp., supra.* The rule has become so thoroughly woven into the fabric of our law and our commerce that only a legislative mandate will completely abolish it. *See Darlington, supra.*

Nevertheless, as with any hoary principle of law, the at-will rule has spawned judicial exceptions. The discharged employee can now seek relief through an action in tort for wrongful discharge. A discharge is "wrongful"

when it transgresses a clearly-articulable public policy or when the employer intends to harm the employee. *See Geary v. United States Steel Corp., supra; Tourville v. Inter-Ocean Ins. Co., supra.* In addition to the wrongful discharge action, the employee can, as always, defeat the at-will presumption by establishing that he or she contracted for an employment other than one terminable at will. Courts in our sister states increasingly have recognized that this kind of contract can arise from such sources as employee handbooks. *See e.g., Woolley v. Hoffman–LaRoche Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985); *Weiner v. McGraw–Hill Inc.,* 57 N.Y.2d 458, 443 N.E.2d 441, 457 457 N.Y.S.2d 193 (1982). *See also Banas v. Matthews Int'l Corp., supra,* 348 Pa.Superior Ct. at 502–03, 502 A.2d at 657 (Beck, J. concurring and dissenting). This court, however, has repeatedly refused to recognize contractual modification of the at-will rule absent a clear expression of the parties' intent. *See Veno v. Meredith, supra; Martin v. Capital Cities Media, Inc., supra; Darlington v. General Electric, supra.* The need for clarity is not unique to at-will employment cases. A party who wishes to enforce a contract must plead every element of that contract specifically, and clarity is particularly important when the alleged contract is oral. *See Snaith v. Snaith,* 282 Pa.Super. 450, 422 A.2d 1379 (1980). We cannot give legal significance to vague promises or to statements that reflect only the aspirations or hopes of the employer, whether written or spoken. The ordinary language of friendship and collegiality should not usually bind the speaker or writer as an enforceable obligation. In this case, none of the words or actions that the Clays attribute to their former employer even approach a clear impression of intent to contract away the at-will rule.

The recent decision of this court in *Veno v. Meredith, supra,* guides our disposition here. In *Veno,* a discharged employee had attempted to establish at trial that he and his former employer had contracted for an employment of definite duration. We outlined the employee's case as follows:

> In April, 1973, when appellant and his wife purchased a home, his employer, Mr. Meredith, co-signed both the disclosure statement and demand note in the sum of $5,400.00. Appellant further testified that Mr. Meredith said to him, "We're both the same age, we're both going to retire together, we're not making a lot now, but we'll make it later on. I want you to raise your children here. I want them to go to the school. I want to retire together." Moreover, appellant turned down other job opportunities throughout his employment including one from his former employer—an offer he made known to Mr. Meredith.

*Veno, supra,* 357 Pa.Superior Ct. at 100, 515 A.2d at 579. We concluded that the statements of the employer were "broad," "vague" and "aspirational." They did not suggest "that the parties contemplated a definite duration for the employment." *Id.* Certainly the same is true of the very similar statements that Mr. Gruenwald presumably made on behalf of Advanced Computer in this case. Moreover, in *Veno,* we declined to give contractual effect to the employee's refusal of "other job opportunities." *Id.,* 357 Pa.Superior Ct. at 101, 515 A.2d at 580. We recognized that when an employee furnishes sufficient "additional consideration" beyond that which the parties contemplated in their employment agreement, the employer cannot discharge the employee without "just cause." *Id. See also Lubrecht v. Laurel Stripping Co.,* 387 Pa. 393, 127 A.2d 687 (1956); *Darlington v. General Electric, supra.* We also recognized, however, that this kind of "additional consideration" must either confer a "substantial benefit" on the employer or burden the employee with a "substantial hardship." *Veno, supra,* 357 Pa.Superior Ct. at 101, 515 A.2d at 580 (quoting *Darlington, supra* at 201, 504 A.2d at 315). Neither the employee in *Veno* nor the Clays in the present case met this standard. Purchasing a new home and foregoing other employment opportunities are detriments that "all manner of salaried professionals" incur in reliance upon their employment. *Id.,* 357 Pa.Superior Ct. at 102, 515 A.2d at 580. The facts alleged by the Clays simply do not

suggest that they "brought to the employment so substantial a benefit, or incurred so detrimental a hardship in taking the job, that [they] should be accorded treatment any different from the typical at-will employee." *Id.*

██ Even if the Clays somehow did plead the necessary elements to prove a contract of definite duration, they have failed to allege any facts that would render either Mr. Gruenwald or Mr. Baus liable for breach. In fact, the complaint indicates that the Clays "were hired by the Defendant corporation." It also indicates that the Clays relied upon representations of "the Defendant corporation" when they "ceased looking for other gainful employment" and that they informed "the corporation," through its president Mr. Gruenwald, of their intent to buy a new home. The Clays nowhere allege that either Mr. Gruenwald or Mr. Baus was party to the employment agreement between the Clays and Advanced Computer. If neither Mr. Gruenwald nor Mr. Baus entered into the contract with the Clays, they could not have breached that contract.

██ Just as the breach of contract claims against Mr. Gruenwald and Mr. Baus must fail, so too must the intentional infliction of emotional distress claim fail. The Clays alleged in their complaint that Mr. Baus had attempted to have "private conversations" with Mary Clay during work hours and that these attempts were "sexually suggestive." They also alleged that Mr. Baus had given Mary Clay "pornographic" and "sexually explicit" gifts on two occasions. Furthermore, when Mary Clay complained to Mr. Gruenwald on this behavior, Mr. Gruenwald urged her to "be nice" to Mr. Baus. The allegations suggest that because Mary Clay refused Mr. Baus' sexual advances, Mr. Baus conspired with Mr. Gruenwald to discharge both Jeffrey and Mary Clay from their employment with Advanced Computer. Taking all well-pleaded facts in the complaint as true, we certainly agree that the conduct attributed to Mr. Gruenwald and Mr. Baus is obnoxious and reprehensible. It might even have supported a complaint before the Penn-

sylvania Human Relations Commission.[8] It does not, however, amount to intentional infliction of emotional distress.

The Restatement (Second) of Torts § 46(1) (1965) imposes liability against "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." This provision reflects the law in Pennsylvania. See D'Ambrosio v. Pennsylvania National Mut. Cas. Ins. Co., 494 Pa. 501, 431 A.2d 966 (1981); Reimer v. Tien, 356 Pa.Super. 192, 514 A.2d 566 (1986); Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa.Super. 377, 368 A.2d 770 (1976). Comment (d) under Section 46 describes the type of conduct that crosses the "extreme and outrageous" threshold:

> **Extreme and outrageous conduct.** The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

See also D'Ambrosio v. Pennsylvania National Mut. Cas. Ins. Co., supra; Lazor v. Milne, 346 Pa.Super. 177, 499 A.2d 369 (1985). This standard plainly anticipates outrages far beyond the indignities and insensitivity that too often taint our daily lives. The Clays have failed to allege such extreme conduct.

---

**8.** We need not consider whether the Clays' allegations would support a claim for wrongful discharge. As we have indicated, the trial court did not reach wrongful discharge on the merits because it believed that it lacked subject matter jurisdiction over such claims.

We do not underestimate the seriousness of sexual harassment in the workplace. Nor do we exclude the possibility that, under different circumstances, sexual harassment could support a claim for intentional infliction of emotional distress. Both Congress and the General Assembly have recognized that invidious discrimination does not belong in the workplace. Although we agree, we cannot find that the conduct attributed to Mr. Gruenwald and Mr. Baus was "atrocious and utterly intolerable in a civilized community."

The Clays suggest, however, that the trial court acted precipitously in concluding as a matter of law that the allegations in the complaint were inadequate. We disagree. The court, not the fact finder, must determine in the first instance "whether the actor's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery." *Reimer v. Tien, supra* 356 Pa.Super. at 200, 514 A.2d 569. *See also Dawson v. Zayre Dept. Stores,* 346 Pa.Super. 357, 499 A.2d 648 (1985); *Lazor v. Milne, supra;* Restatement (Second) of Torts § 46, comment (b).

For the foregoing reasons, we reverse that portion of the trial court's order which dismissed, for lack of subject matter jurisdiction, the claims against Bjorn Gruenwald and Richard Baus for wrongful discharge. We affirm that portion which dismissed the claims for breach of contract and intentional infliction of emotional distress.

Order reversed in part and affirmed in part.

TAMILIA, J., files a concurring and dissenting opinion in which CAVANAUGH, J., joins.

TAMILIA, Judge, concurring and dissenting:

I write separately as, while I concur fully with the majority that appellants cannot prevail on the merits in an action for wrongful discharge, I respectfully disagree with the majority view that the Pennsylvania Human Relations Act (P.H.R.A.), 43 P.S. 951 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* do not provide

the exclusive remedy for wrongful discharge based on sexual discrimination in the work place, even when couched as a tort claim.

From the appellants' reasoning, it is evident that the only actionable complaint available to them has to do with sexual harassment in the work place. The majority has concluded that a wrongful discharge action may be pursued, despite the fact that sexual discrimination is one of the categories covered by the P.H.R.A. In its analysis of the Act, in a literal reading of section 962(b), the majority focuses on the words *"when invoked,* be exclusive and the final determination ...",* the sentence, *"If such [sic] complainant institutes any action based on such grievance [sic] without resorting to the procedure provided in this act, he [sic] may not subsequently resort to the procedure herein"* ... and in subsection 962(c), *"if a complaint [sic] invokes the procedures set forth in this act,* that individual's right of action in the courts of the Commonwealth shall not be foreclosed." Majority Slip Op. at 1380 (emphasis added in majority Opinion). In doing so, it concludes the P.H.R.A. did not provide for exclusivity of remedy in sexual discrimination cases.

The majority cites to *Daly v. School District of Darby Twp.,* 434 Pa. 286, 252 A.2d 638 (1969) in holding that a party can choose alternative remedies; additionally, "[o]nce the party elects his or her remedy, the chosen path becomes exclusive." Majority Slip Op. at 1380 citing *Fye v. Central Transportation Inc.,* 487 Pa. 137, 409 A.2d 2 (1979). In *Daly,* the appellant was not a party in the original decision by the School Board to resolve a racial discrimination matter and, therefore, her action to protect her constitutional rights denied by an action of the Board *and* the Human Relations Commission was not "invoked" within the meaning of section five. (Section 5 of the Human Relations Act as amended is 43 P.S. § 955.)

Reliance on *Fye* is equally dubious as that case held that once the P.H.R.A. proceeding was invoked, even when the party then withdrew the proceeding, she was prohibited

from instituting a case in court. It went on to say in dicta that the General Assembly did not withdraw the other remedies that might be available depending upon the nature of the injury sustained.

Prior to 1974, a complainant invoking the procedure of this Act was barred from seeking any other remedy for redress of the asserted grievance, and this rule was without exception. By the 1974 amendment to section 12 of the Human Relations Act, a narrow exception was included in the rule of exclusivity. Section 12(c) provided that the rights of a complainant invoking the procedure under the P.H.R.A. would not be foreclosed from resort to the courts, "if within (1) year after filing of a complaint with the Commission, the Commission dismisses complaint or has not entered into a conciliation agreement to which the complainant is a party...." (Section 12(c) of the Human Relations Act as amended is 43 P.S. § 962(c).)

The reading I find *most* significant is that of Justice Nix in *Fye, supra,* 487 Pa. at 142, 409 A.2d at 5. In response to an argument that the statute should be broadly construed to minimize the exclusivity section, the Court said:

In response we note that this language appeared in the section [as to liberal construction] before there was an exception to the rule of exclusivity. A liberal construction for the accomplishment of the purposes of the act is not synonymous with a relaxation of the rule of exclusivity for the benefit of a complainant. It is clear from the legislation that the General Assembly was of the view that the procedures provided by the act represented the most effective approach to the problem of discrimination. Thus, the language relied upon by appellant cannot properly be construed as authorizing a broad reading of the exception to the rule of exclusivity.

Further, in commenting on the weight to be given the exclusivity section, Justice Nix stated:

Obviously, the rule of exclusivity was of high priority in the legislative scheme; as first promulgated, the act provided for no exception to the rule, after a number of

years of experience the General Assembly was willing only to provide two carefully defined situations. This history provides no basis for a judicial finding of an implicit legislative intent to extend the expressly unambiguous perimeters of the terms of the 12(c) exceptions.

*Id.*, 487 Pa. at 142, 409 A.2d at 5. It would appear that the Supreme Court was firm on exclusivity and, at worst, vague as to the permissible suits outside the P.H.R.A.

The view proposed by the majority will open every discharge, where discrimination may be alleged, to court review on a wrongful discharge theory for rights *which were created by the P.H.R.A.* This will undermine the stated purpose of the act, present a flood of litigation and deny the administrative process which the legislature decided is the most effective means to deal with a social ill that permeates many aspects of our society.

I believe the trial court was correct in relying on *Wolk v. Saks Fifth Ave.*, 728 F.2d 221 (3rd Cir.1984) which held that in each case of wrongful discharge based on violation of public policy, the Pennsylvania courts failed to find a violation of public policy and, therefore, a cognizable common law remedy, *where there existed some alternative form of relief.* In *Sola v. Lafayette College*, 804 F.2d 40 (3rd Cir.1986), the third circuit, although cognizant of *Fye, supra,* opted for according respect for the administrative procedures established by the Pennsylvania legislature and refused to recognize a new cause of action designed to further Pennsylvania anti-discrimination policies. In *Carney v. Pennsylvania Human Relation Commission*, 45 Pa.Cmwlth. 10, 404 A.2d 760 (1979), the Commonwealth Court held the Act did not provide for alternative remedies but that the court, combined with the P.H.R.A., was the remedy and that the P.H.R.A. must be pursued as a condition prerequisite to an accrual of a right of action in the Pennsylvania courts. In *Householder v. Kensington Mfg. Co.*, 360 Pa.Super. 290, 520 A.2d 461 (1987), this Court followed these precedents in holding that an action for

wrongful discharge, based on discrimination of a handicapped person, was barred by the P.H.R.A.

In *Daly, supra*, the action was not "invoked" within the meaning of section five and, therefore, permissible. In this case, the action which the majority would permit is one created by section five (§ 955). It is clear, as pointed out in *Fye*, that the legislature intended to open the exclusivity aspect of the P.H.R.A. only to the degree necessary to avoid allowing an aggrieved to commence several different actions for relief. Obviously there are a number of ways a party may seek relief, including proceedings under the Federal Act of 1964, the Civil Rights Act, § 1983 and local Human Relations ordinances pursuant to section 962.1. It is even arguable that if the sexual harassment involved touching or exposure, civil assault or criminal charges could be filed and not be barred by exclusivity under the P.H.R.A.

The majority would find that while there is a right to bring an action for wrongful discharge, under these facts, the action for wrongful discharge cannot prevail, nor would the allegations support an action for "emotional distress". All that remains is some form of sexual discrimination, which is a creation of the P.H.R.A. and, therefore, totally within the exclusivity clause of 962(b). The majority holding *necessarily* requires and permits alternative actions for sexual discrimination (and all other § 955 categories), so long as they are captioned wrongful discharge, to be brought either in the courts or before the Pennsylvania Human Relations Commission. The exceptions propounded to the P.H.R.A., in my view of the Act and the case law, never intended this to be the case. It must be remembered that the predecessor title to the P.H.R.A. was the Fair Labor Employment act, and its intent was to curtail discrimination in the work place. Since wrongful discharge in Pennsylvania is founded on breach of contract, and no remedy is available for discrimination outside of contract, where discrimination is the basis for termination outside of a contract, the sole remedy is under the P.H.R.A. Indeed the review of this case on the merits, by the majority, in view of the very stringent stand taken by our courts in

wrongful discharge cases, would indicate a proceeding under the P.H.R.A., is the only effective proceeding.

Under these circumstances, upon remand, I am at a loss as to what the trial court may do other than to dismiss for failure to state a cause of action. Now that appellants cannot prevail under their wrongful discharge theory, they are also precluded from what might have been an effective action under the P.H.R.A. The powers given to the Human Relations Commission are broad enough to require reemployment, payment of back wages and other specifically tailored relief to deal with discrimination, when no relief would be available in a civil action. The expertise and investigative powers of the Commission provide a superior vehicle for ascertaining the validity of the claim and assuring that justice be done *and* preventing repetition of the wrongful behavior by the employer. I believe the majority has gone astray, and unless and until the Supreme Court holds otherwise, upon direct consideration of this issue, we should not reverse the precedent so well established.

CAVANAUGH, J., joins.